No. 9015
Orleans Appeal

---

MRS. BETTY FRANKLIN v. FIRST AFRICAN BAPTIST CHURCH OF NEW ORLEANS, Appellant

---

(June 22, 1925, Opinion and Decree.)

---

(*Syllabus by the Court.*)

1. Louisiana Digest—Evidence—Par. 108.
The best evidence of any fact must if accessible be produced but if inaccessible the next best evidence may be received.

2. Louisiana Digest—Evidence, Par. 110.
Where primary evidence is, or should be, in possession of a party who is called upon to produce it and he fails to do so, secondary evidence may be introduced by his opponent and he is not in a position to complain of its unsatisfactory character.

Appeal from Civil District Court, Hon. Percy Saint, Judge.

This is a suit on a promissory note.

Judgment for plaintiff and defendant has appealed.

Judgment affirmed.

E. A. Parsons, attorney for plaintiff, appellee.

E. J. Rosborough, H. W. Robinson, attorneys for defendant, appellant.

WESTERFIELD, J. Plaintiff, the universal legatee of Harriette Smith, sues defendant in personam upon a certain mortgage note in the sum of $1,000.00 dated New Orleans October 28th, 1910, payable three years after date to the order of ourselves signed and endorsed by the "First African Baptist Church of New Orleans La. by Joseph H. Meade, Prest. Trustee Board." and paraphed for identification with an act of mortgage passed before E. H. Parsons November 28th, 1910. The following inscription appears upon the back of the note "March 3, 1914 payment of this note extended for five years from November 28th, 1913 First African Baptist Church of N. O. La. By J. H. Meade Pres. of Board of Trustees N. O. Mar. 3, 1914."

This suit was filed April 11th, 1922 and the sole defense is a plea of prescription of five and ten years. There was judgment for plaintiff and defendant has appealed.

It is evident that if the purported extension of the note by J. H. Meade on March 3rd, 1914 was the valid act of the defendant corporation, the note was not prescribed at the time suit was brought since the prescription of five years would not accrue until five years from the extended maturity of November 28th, 1923. But defendant denies the validity of the extension upon the ground that J. H. Meade was not authorized to act for the Board of Trustees and that the Board of Trustees were themselves without authority to extend the note.

The Board of Trustees derive their

powers from the following provision of the charter:

"The Board of Trustees shall have the management and control of the Church property and of all church affairs. It may purchase real property for account of the corporation and bind it for the price thereof, but it shall not alienate or encumber the church property without the consent of the majority of the church members competent to vote under this article; the consent of said church members when given shall be endorsed by the certificate of said church clerk, counter-signed by the President of the Board of Trustees, and attested by the seal of the church, if there be one, and no other evidence of the consent of the church members shall be necessary."

The argument is that since the Trustees have no power to alienate or encumber the church property without the consent of a majority of the church members they could not extend the note because such action amounted to an alienation. We cannot follow counsel here for it seems to us the statement of this proposition carries its own reputation.

Was Meade authorized by the Trustees?

Upon the trial of the case Meade testified that he had been President of the Board of Trustees for fourteen years and had signed the note originally with. full authority. He was asked whether the extension of the note of March 3rd, 1914 had been authorized by the board when counsel invoked the "best evidence" rule and was sustained by the court, the witness being withdrawn. Thereupon plaintiff's counsel obtained a subpoena duces tecum for the production of the minutes of the meetings of the Board of Trustees. Defendant in response to the writ produced the minutes from January 24th, 1909 to August 13th, 1909 and from May 3rd, 1921 to January 9th, 1922 but no minutes covering the period from 1909 to 1921. In response to plain-tiff's demand for the missing minutes de-fendant counsel stated that "the return of defendant is that we have none".

Meade was then recalled and over the renewed objection of counsel he was per-mitted to testify in detail concerning an alleged meeting of the Board of Trustees at which he was authorized to sign the note. Before examining this evidence we will consider counsel's objection to its introduction.

The best evidence rule requires that "the highest degree of proof of which the case from its nature is susceptible must, if accessible, be produced". But if the best evidence can not be produced then "the next best evidence should be admitted". The primary evidence of what was done by the Board of Trustees in the instant case was not accessible and secondary evi-dence was therefore admissible. Moreover the primary evidence was or should have been, in defendant's possession and his failure to produce it was the occasion and created the nesessity for resorting to the next best evidence. Under such circum-stances defendant can not complain of the unsatisfactory character of · such evidence.

"Failure of Adverse Party to Produce Primary Evidence on Notice—a. In Gen-eral. Where the primary evidence of a fact which a party desires to prove is in the possession or control of his adversary, who after being notified to produce it fails or refuses to do so, secondary evidence becomes admissible. The rule applies, al-though the person to whom the notice is given is not a party to the record, if it appears that he is the real party in interest and the fact that the party seeking to show the contents of the writing might have com-p·lled its production by its adversary does not preclude his offering secondary evidence of its contents under the circumstances stated. A person who has failed to produce the primary evidence, and through whose fault the necessity has arisen for resorting to secondary evidence cannot complain that the latter is not of a wholly satisfac-tory character."

Corpus Juris Verbo Evidence Vol 22 p. 1038.

See also Merritt vs. Wright, Williams & Co. 19 La. Ann., 91., the syllabus of which reads as follows:

"The testimony shows that Downing, a merchant in Vicksburg, received from plaintiffs a draft on defendants, Wright, Williams & Co., of New Orleans, and forwarded it to them with a letter written to himself; book, and, subsequently, sent the letter-that he copied the letter into his letter-book to defendants, and they are now in possession of the letter, and the letter-book, and have failed to produce them on demand. Held that on a foundation thus broad, the plaintiffs are entitled to prove the contents of the missing letter by parol, and in connection therewith to show the copy from the letter-book."

There was no error in admitting this testimony. Meade gives the following account of his alleged authorization:

"A. I called the board of Trustees in special meeting and read to them a letter that had been received from the attorney threatening a suit, and I knew that the Church had no money. At that time I called the board together, explained the situation to them, and at that meeting a resolution was passed and adopted by the board authorizing me, as Chairman of the Board, to take the matter up with our attorney who then was representing the Church in the person of Mr. Parsons, and his advice, after consulting him, was to renew the note, and I did that to save the Church.
"Q. Do you recall the name of the lawyer who was pressing the Church for for payment at that time?
"A. The late Mr. Pen Baldwin, and the other was an attorney from Mississippi, but I don't remember his name. These letters were presented to the Board at that meeting and it was upon these letters that the resolution was offered to save the Church.

The court.:

"Q. Are you certain that a resolution was read and placed upon the minutes of that meeting upon that occasion?
"A. Yes, a resolution was read authorizing me, as Chariman of the Board, to

save the Church and take the matter up immediately with Mr. Parsons,
"Q. You are certain that the resolution was made a part of the meeting at which you were authorized to extend that note?
"A. Yes, sir."

Mr. Parsons:

"Q. Did you take the matter up with Mr. Parsons?
'A. Yes, immediately after the meeting.
"Q. Was he the lawyer of the Church?
"A. Yes, sir.
"Q. Did you follow his advice?
"A. Yes, sir."

(Testimony of J. H. Meade. pp. 5-6.)

Meade was deposed as President of the Board of Trustees and was succeeded by R. O. Sanders. Sanders testifying in dedefendant's behalf says he could not remember any meeting of the Board at which Meade was authorized as alleged and referring to the minutes of the board and their disappearance remarked that "the minutes of the Board of Trustees has always been a matter of secondary importance".

He was asked:

"Q. You heard Meade testify that a meeting of the Board of Trustees was called in the latter part of February when he was authorized to consult Mr. Parsons about this mortgage note.
"A. There was meetings held but I never heard of any matter with reference to Betty Franklin. There was meetings called to discuss other mortgage notes * * * "

Mr. Parsons, at that time the attorney for the Church and now the counsel for plaintiff in this suit testified to the affect that the Betty Franklin note was held by the late Mr. Pem Baldwin then a member of this bar. That Mr. Baldwin threatened suit and that he Parsons, advised with Meade and councelled the extension of the note in order to save the Church.

There is no specific denial that Meade was authorized by the Board and he testi-

fies positively. The circumstances corroborate him. The Church was certainly interested in extending its obligation when it could not pay it. The evidence shows that the Franklin note was secured by a second or third mortgage and suit on this note would in all probability cause the holders of the prior liens to foreclose.

We have reached the conclusion that Meade was properly authorized to extend the note. This view makes it unnecessary to consider the extended argument of counsel concerning the implied powers of executives of non-trading corporations. The plea of prescription was properly overruled.

For the reasons assigned the judgment appealed from is affirmed.