OVERTON, J.
 

 These cases were consolidated for argument in this court, and will be disposed of in one opinion. The first three plaintiffs named in the title, Ruiz, Urruela, and Calderon, are citizens of, and sugar planters in, the republic of Guatemala. The fourth plaintiff, De Leon, was a Guatemalan commission merchant, residing in the city of Guatemala. While the appeal in his case was pending De Leon died, and his widow, Maria Lopez Caeeres, was recognized by the courts of Guatemala as his only heir. Later, Mrs. De Leon, by order of this court, was substituted as party plaintiff in place of her deceased husband. The defendant in these cases is a corporation, organized under the laws of the state of Delaware, and during the negotiations out of which these suits arose had an office in the city of New Orleans and a permit to transact business in this state.
 

 The suit of Ruiz is based on a claim for $8,472.49, with legal interest, this sum representing the price of sugar, alleged to have been sold by him to defendant, through the latter’s agent, Juan Maria de Leon, one of the plaintiffs, mentioned above.
 

 The suit of Urruela is based upon a claim for $32,000, with legal interest, this sum representing the price of sugar, alleged to have been sold by him to defendant through the latter’s alleged agent, De Leon.
 

 The suit of Calderon is based upon a claim for $10,9S4.72, with legal interest, this sum representing the price of sugar, alleged to have been sold by him to defendant through its alleged agent, De Leon.
 

 
 *31
 
 The claim of De Leon, which is now being prosecuted by his widow, is for $13,266.33, with legal interest, of which sum $7,510.42 represents disbursements alleged to have been made by De Leon for the account of defendant, as the latter’s agent, and the balance, amounting to $5,755.94 is for commissions or profits, also alleged to be due De Leon as agent for defendant, for having purchased for the latter, at its request, the foregoing and other sugars, and also some honey, under arrangements made by defendant with De Leon. Under these arrangements, as appears from De Leon’s petition, as amended, De Leon was to quote defendant prices on sugar and other commodities, produced in Guatemala, cost and freight, seaboard. De Leon was to purchase these, it is contended, on the acceptance of the prices quoted by him, for the account of defendant, paying the planters and others from whom purchased at prices f. o. b. railroad station, by draft drawn by him on defendant, and was to pay the freight and other charges to seaboard, and draw a draft on defendant for the amount of these disbursements and for his commissions, the latter to consist of the difference between the cost price of the sugar plus the railroad freights and other disbursements and the price to be paid by defendant.
 

 Defendant concedes that it purchased the goods at the prices quoted by De Leon to it; that it received the goods; that it did not return them, but urges that it does not owe the three planters, who are plaintiffs herein, for the goods, because it did not purchase the goods from them, through De Leon as its agent, but purchased them from De Leon as principal.- It also urges that it does not owe De Leon any commissions or for any disbursements made by him, for the reason that he was not its agent, and that whatever it may owe him, if anything, it owes him as the vendor of the goods. In short, the defense to all of these suits is that De Leon was not defendant’s agent, but was a principal in the trans-’ actions upon which these suits rest.
 

 As relates to the claims of Ruiz, Urruela, and Calderon, each of these plaintiffs alleged and testified, and, as we appreciate it, contended throughout, that he sold the sugar involved in his suit to defendant through De Leon as defendant’s agent. De Leon himself in his suit alleged, in effect, that defendant purchased the sugar from these plaintiffs, through him, as its agent, and testified accordingly both in his suit and in theirs. Hence, by reason of this concurrence of view among all of these plaintiffs as to whom the sugar was sold, defendant might have settled with Ruiz, Urruela, and Calderon with perfect safety, for De Leon, from whom defendant urges that it purchased, denied that he was the vendor, and testified that these plaintiffs were the vendors of the sugar. In fact, defendant might have even settled the disbursements and commissions claimed by De Leon on these sugars with safety, and without paying a dollar more than it agreed to pay. in buying them, for the amounts claimed by Ruiz, Urruela, and Calderon, added to the disbursements and commissions claimed by De Leon, in which Ruiz, Urruela, and Calderon claimed no part, is the sum that defendant agreed to pay for the sugars. But defendant insists, as we have said, that it did not buy from Ruiz, Urruela, and Calderon, but from De Leon, and therefore owes the former nothing, and does not owe De Leon any commissions or disbursements. However, as it will appear, we think, in passing on the claim of De Leon, this defense is not well founded, not only as against the claim of De Leon, but also as against the claims of the remaining plaintiffs.
 

 Before passing upon the question of agency, and the merits of De Leon’s claim, it is necessary to consider an objection urged by defendant to the filing of an amended petition by De Leon, after issue joined, and
 
 *33
 
 after evidence had been taken in his case, De Leon’s claim, it may be said again, is based not only on commissions and disbursements in the Ruiz, Urruela, and Calderon transactions, but also on commissions and disbursements claimed in other transactions by De Leon for the account of defendant. De Leon alleged in his original petition that he was to be paid the disbursements incurred by him in entering into the contracts for the purchases, and 50 cents a quintal (100 pounds Spanish weight, 101.43 pounds English weight) on all sugars purchased by him as defendant’s agent. In the amended petition, De Leon alleges that the allegation that he was to receive 50 cents a quintal, as compensation, was made 'in error and through inadvertence, and that, as said by us in stating the basis of De Leon’s demand, the arrangement between him and defendant, in truth and in fact, was that De Leon was employed as defendant’s agent; that he was to quote defendant prices, cost and freight to seaboard, and, upon approval, he was to buy the commodity and give a draft on defendant to the vendor for the purchase price, f. o. b. railroad station; that he was to pay the railroad freight and other charges from the station to the steamer, and draw a draft on defendant for the amount of these disbursements and the amount of his commissions, the latter to consist of the difference between the cost price of the sugar plus the railroad freights and other, disbursements and the price agreed to be paid by defendant for it.
 

 The objections urged to the filing of this supplemental petition, which were overruled below, substantially are that it changes the substance of De Leon’s demand, in contravention of article 419 of the Code of Practice, which prohibits an amendment that alters the substance of the demand by making it different from the one originally brought; that it was tendered after issue joined, after evidence had been taken in the case, and some four years' after the original petition had been filed.
 

 If the allegations appearing in the original petition were considered without reference to the itemized accounts thereto attached it might be said that the amended petition alters the substances of the original demand by setting forth a contract different in some important particulars from the original contract declared upon. However, it may be observed that the amendment does not change the amount sued for, which is the same in the petition before and after amendment; that it adheres to the contention that De Leon was defendant’s agent, and that it makes no change as to De Leon’s claim for disbursements. The only difference between the petition on its face, before and after amendment, is that De Leon, instead of claiming that he is entitled to 50 cents a quintal on every quintal purchased by him, as commission, and to disbursements, claims that he is entitled, as commission, to the difference between the amount defendant agreed to pay and the amount paid the vendor for the commodity plus the freight and other disbursements from the railroad station to seaboard. This is the difference between the petition before and after amendment, when the petition before amendment is considered without reference to the accounts thereto attached and made part thereof. But a document attached to and made part of a petition amplifies the allegations of the petition to which attached, and corrects errors therein by controlling the allegations thereof in case of variance. Matthews v. Williams, 25 La. Ann. 585; Teutonia National Bank v. Wagner, 33 La. Ann. 732; Lockhart v. Morey, 41 La. Ann. 1165, 4 So. 581; Sladovich v. Glaser, 150 La. 918, 91 So. 297. The accounts attached to the original petition show clearly that the compensation De Leon was claiming was not 50 cents a quintal, as alleged in the original petition, and we think they contain sufficient
 
 *35
 
 data to show, when ánalyzed, that the com: pensation, as shown by them, that De Leon was claiming, was necessarily arrived at in the manner set forth in the amended petition as the basis of compensation. We are therefore not prepared to hold that the amendment altered the substance of the demand by making it different from the one originally brought. Its purpose was to correct a manifest error appearing on the face of the petition, and thereby clarify a situation which had been made vague and uncertain, but which after all did not affect the real issue of agency vel non. As said in Meyer v. Farmer, 36 La. Ann. 785:
 

 “Amendments are reducible to no unbending rule. Each case must be left to the sound discretion of the court. They should always be permitted where they tend to the furtherance of justice and cause no injury, without prejudice to the right of the other party, who may plead and show surprise, to ask time to prepare himself.”
 

 See, also, to the same effect Bussey v. Rothschild, 27 La. Ann. 316; Davis v. Arkansas Southern R. Co., 117 La. 320, 41 So. 587; Sisters of Charity v. Emery, 144 La. 614, 81 So. 99; Southern Iron & Equipment Co. v. Cardwell Stave Co., 154 La. 109, 97 So. 332.
 

 While the amendment, in this instance, Was filed after evidence had been taken, and about four years after the filing of the original petition, yet the court granted a continuance to enable defendant to further cross-examine the witnesses, and to take further evidence if it desired — a privilege which defendant did not avail itself of. The case was not tried until some seven months after the 'objections to the amendment were overruled. Under all of the circumstances we feel that we should not disturb the ruling of the lower court allowing the amendment.
 

 We approach now the question whether De Leon was defendant’s agent as he and the remaining plaintiffs herein contend, or whether, in these transactions, he was not an agent, but the vendor, as urged by defendant. At the outset it is proper to notice that defendant, a Delaware corporation, was at the time of these transactions a 'subsidiary of the American Trading Company, a corporation organized under the laws of Maine, with an office in New York. In addition to defendant, the American Trading Company had, as a subsidiary, the American Trading Company (Pacific Coast), which is a corporation organized under the laws of Virginia, with an office in San Francisco, Cal., and another in Tacoma, Wash. Besides these subsidiary companies the American Trading Company had, at the time of the transactions here involved, and perhaps still has, branches in various parts of the world. These companies co-operated with each other; in fact the subsidiary companies were controlled by the New York office of the American Trading Company, accepted instructions from it, and the profits of these subsidiaries eventually found their way to the New York office. These facts largely appear from the evidence of William Schuppert, chief accountant of defendant, who testified as follows:
 

 “Q. But the boss of the whole business was the New York Company? A. They controlled the stock of the New Orleans Company.
 

 “Q. So that all the profits of the New Orleans Company went to the New York Company? A. Yes, sir.
 

 “Q. That is a fact? A. Yes, sir.”
 

 And from the evidence of Jose Luis Santisteban, a representative of the New York office of the American Trading Company, which is as follows:
 

 “Q. Is the New York office the head of all these branches? A. Yes, sir. This company has subsidiary companies.
 

 “Q. Do all these subsidiary companies take instructions from the New York office? A. Yes, sir.”
 

 To show the 'extent of the control of the American Trading Company (the Maine cor
 
 *37
 
 poration), through its New York office, over defendant, the American Trading Company of New Orleans, we quote the following from the evidence of Schuppert:
 

 “Q. Exactly what became of the American Trading Company of New Orleans? A. That I don’t know.
 

 “Q. Is it no longer in business here? A. No, sir.
 

 “Q. Did Mr. Santisteban come down here and liquidate it'and take it all up to New York? A. He did.
 

 “Q. That is a fact, is it? A. That is a fact.
 

 “Q. I mean he took it to the American Trading Company of New York? A. Yes, sir.”
 

 And, from Sanfisteban’s evidence, as follows :
 

 “Q. Who is the representative of the American Trading Company in New Orleans to-day? A. Myself.
 

 “Q. You are here for what purpose? A. To liquidate the company.
 

 “Q. Did the liquidation arise from bad financial conditions, or from a mere desire of the corporation to liquidate? A. From the mere desire of the corporation to liquidate, in view of the fact that we can attend to our business through New Orleans from, New York, or from our San Francisco office.”
 

 The connection of De Leon with this association of companies began in the-latter part of July, 1919, at which time he was appointed agent by C. J. Pfaffenberger, a representative of the American Trading Company (Pacific Coast). It does not expressly appear that this appointment was to apply to any other of the associated companies than the one on the Pacific coast, and, to say the least, it is doubtful whether it did, though it may have been contemplated that it should. In this connection, however, it may be said that almost immediately after the appointment, Pfaffenberger, acting for the American Trading Company (Pacific Coast), prepared and sent De Leon for issuance a circular, which was sent to many of the merchants and planters of Guatemala. This circular was headed as follows:
 

 “American Trading Company
 

 “Exportation — Importation—Consignment
 

 “San Francisco, California — 244 California St. “New
 
 York
 
 — 25 Broad Street.
 

 “New Orleans — 611 Maison Blanche Bldg. “Tacoma — Washington.”
 

 In this circular, under the foregoing heading, it was said, “We have conferred our representation in the Republic of Guatemala on Señor Don Juan Maria de Leon,” and that De Leon would sign for “American Trading Company, Juan Ma. de Leon.” This circular, though signed by the American Trading Company (Pacific Coast), conveys the impression that the appointment was not intended to be limited to that particular one of the associated companies, for De Leon was not to sign “American Trading Company (Pacific Coast),” but merely “American Trading Company.” This fact, when considered in connection with the manner in which the circular is headed, showing offices of the American Trading Company in San Francisco, New York, and New Orleans, is suggestive that the appointment was intended to be for the benefit of the affiliated companies operating from each of these places.
 

 But whether or not the appointment was intended to apply only to the American Trading Company (Pacific Coast), it was impliedly recognized as applicable to the American Trading Company, doing business in New York, for about six months after the appointment, in reply to a communication from De Leon concerning the purchase of coffee in Guatemala, that company, through J. Torres Wendell, wrote De Leon that:
 

 “Our representative, Mr. J. L. Santisteban, leaves for San Francisco * * * and that with him you will be able to amply deal with everything
 
 relating to the development of our transaetions in Guatemala.”
 
 (Italics ours.)
 

 Yery shortly after this letter was written Santisteban left for Guatemala and other points. He arrived in Guatemala in the early part of March, 1920. He testified that the
 
 *39
 
 object of Ms visit to Guatemala was to ascertain whether it was to the advantage of his company to transact business there, and whether De Deon was capacitated to represent it. He went there for these purposes, under instructions from New York, and, before leaving, the American Trading Company in that city gave him a power of attorney, containing many specific grants of authority, including the power to appoint attorneys in fact. He made a report on conditions in Guatemala and other countries which he visited, and also upon the ability and responsibility of De Leon. His report on De Leon, according to his own appreciation, was rather favorable. A copy of this report was sent to the various associated companies in the United States.
 

 While in Guatemala City, Santisteban made De Leon’s office his headquarters, used De Leon’s stationery, on which De Leon represented himself as the agent of the American Trading Company, saw a sign on De Leon’s office, showing a similar representation, and made no protest whatever. De Leon testified that, while there, Santisteban named him as agent of the American Trading Company, and both he and his son-in-law, who was at the head of the export department of De Leon’s offices, testified that Santisteban introduced De Leon to various merchants and ' banks in Guatemala City as the agent of the American Trading Company, or so referred to him in conversation.
 

 While in Guatemala, Santisteban, confirmatory of a conversation had with a prominent firm, transacting business in that country, wrote the firm a letter in which he clearly recognized De Leon as agent of the American Trading Company. In chat letter Santisteban said:
 

 “In accordance with our conversation, we 'hereby beg to inform you that our agent Mr. Juan Maria de Leon is authorized by American Trading Co. of New Orleans to carry out with you the contract covering three thousand, quintais of sugar and which the said gentleman will sign.
 

 “Besides Mr. De Leon will draw against the mentioned firm and to your order as it has been agreed upon for the value of said transaction.”
 

 While- in Guatemala, Santisteban also wrote Mr. Durieux, the manager of the American Trading Company of New Orleans, the particular company made defendant herein, a letter which shows that he looked to De Leon to represent the company in New Orleans as well as the other companies, and had discussed the matter with him. -In this letter he said:
 

 “As soon as my work is completed I will send you copy of my report to New York and thereby you will be able to see the way in which the coffee and sugar business from this country can be accomplished.
 

 “In the meantime I have impressed upon Mr. De Leon the necessity of obtaining for you a share of the sugar business and I believe that he, in compliance with my request, has already offered you all the lots of sugar that are available at the present time.”
 

 A few days after Santisteban had mailed the defendant herein, the American Trading Company of New Orleans, a copy of the report, promised in the preceding letter, showing among other things, how sugar could be purchased in Guatemala for exportation, and before the report was received, Durieux, the manager of the New Orleans company, wrote De Leon, complaining of the manner, in reference to payment, in which sugar was purchased for exportation in Guatemala — a matter on which Durieux, it may be said, finally yielded. In this letter, Durieux, writing for the American Trading Company of New Orleans, among other things, said:
 

 “We are a little disappointed with the way the whole transaction has been handled because if we could have gotten you
 
 to Tniy sugar for us
 
 on the customary business basis, we would probably have sold 20,000 bags during the month. * * * ” (Italics ours.)
 

 The foregoing excerpt is a clear recognition by defendant itself that De Deon was
 
 *41
 

 its
 
 agent. It shows that he was to buy sugar for the company, not sell silgar to it.
 

 Not only do we think that the letters touching De Leon support the contention of plaintiffs as to his agency, but also that the cablegrams from defendant to De Leon support that contention. In several of them defendant instructed De Leon not to buy more sugar until authorized by it, or until the offer was submitted to it. These instructions indicate that De Leon was buying, not for himself, but for defendant, and that defendant was afraid that De Leon might buy without first submitting the offer to it for acceptance. Moreover, in some, if not in all of these transactions, De Leon mailed copies of the contracts by which the purchases were made to defendant. These contracts showed that De Leon was purchasing as agent for the American Trading Company, and no protest whatever was made because he was. On the other hand, it is true that there are expressions in some of the correspondence which have a tendency to show that defendant was buying direct from De Leon. These consist of such expressions, used by defendant as “we have purchased from you (naming the number) so many bags of sugar.” These expressions also occur in confirmation of acceptances of offers submitted by De Leon, where such expressions as “we 'confirm the following purchase of you” are used, and are usually found in print as part of a form prepared for the confirmation of the acceptance of purchases. There is also in the record some parol evidence to the effect that De Leon was not the agent of defendant, and that the purchases, with possibly one exception, not necessary to mention, were made from him 'direct. The evidence as a whole, however, satisfies us that De Leon was appointed agent of the American Trading Company, the intention . being that he should act as such for the various associated companies in the United States^ and that he was recognized by defendant in these transactions as its agent. In this connection it may be said that- the question of De Leon’s agency was in each one of these four-cases submitted to a different jury, and -in each instance the jury found in accordance with the views here expressed.
 

 As relates to the commission De Leon was to receive, when he was first appointed agent, the commission was different from that here demanded. However, at the instance of the company in New York, which controlled the other companies, the manner of arriving at this commission, and its amount, were changed. The letter that brought about this change was written by the company in New York, and reads, in part, as follows:
 

 “There is one point pending and it is relative to the profit which may accrue to you. As you know, we limit our profit to a selling commission of
 
 2Vz%
 
 and this barely covers the expense of our import department, it being impossible, although we much would wish it, to divide this commission with you. Such being the case, we deem it convenient that you find the means of obtaining there your commission, and which could be figured as pertaining to the expenses of the consignments.”
 

 Thereafter, De Leon, in quoting prices for acceptance, quoted them at a sum sufficient to allow him a reasonable commission, after allowing for the price to be paid to the planters plus the freight, and other disbursements, to seaboard. It is these prices that defendant accepted, which in line with the foregoing letter, included De Leon’s commissions.
 

 Defendant also urges that De Léon is not entitled to recover on an item for commissions and expenses on 503 quintals of honey purchased by him for defendant, on the ground that De Leon does not set forth in his petition any agreement to purchase honey, and therefore for this reason evidence should not have been received over defendant’s objection to support the claim. While the petition do.es not set forth any claim for the purchase and shipment of honey, yet the accounts annexed to the petition show that the
 
 *43
 
 total amount demanded by De Leon included such a claim. As an account attached to a petition, as already held in this opinion, amplifies and corrects the allegations thereof, in our view, the contention of defendant as to these expenses and commissions is not well founded. Defendant also urges other objections to the admissibility of evidence in these cases. We have carefully considered these objections, but do not find prejudicial error in the rulings on any of them.
 

 Defendant also complains that the court allowed legal interest on the judgments in the Ruiz and Urruela Cases, when the verdicts of the juries in those cases on which the judgments therein rest, do not allow interest. Defendant cites in support of its contention that the trial court erred in allowing intex-est, in those cases, when the juries in them failed to allow it, the case of Cochrane v. Murphy, 4 La. Ann. 6, and other authorities cited in that case. This court, however, has the power, in civil cases, to correct errors in the verdicts of juries, when application is properly made for such corrections. In both of the cases in which the complaint is made the plaintiffs prayed for legal interest in ashing for judgment, and in their answers to the appeals pray that the verdicts of the juries in their cases be corrected by allowing interest. These plaintiffs are clearly entitled to interest. The judgments in their cases allow legal interest from the proper dates. All that it is necessary to do is to give legal effect to the allowance of interest by the trial judge. This will be done by affirming the judgment as to interest.
 

 Without going into further detail, we may say, in closing, that all of the plaintiffs herein, in our view, have established their demands.
 

 • Eor these reasons, and with the understanding above mentioned as to interest, the judgment in each of these four cases is affirmed, defendant to pay the costs of appeal.