88 So.2d 33

**Joseph D. BREAUX**

v.

**Martin L. LAIRD, Jr., et al.**

No. 42149.

March 26, 1956.

Rehearing Denied May 7, 1956.

Gravel & Downs, Alexandria, Clint L. Pierson, John L. Avant, Watson, Blanche, Fridge, Wilson, Posner & Thibaut, Baton Rouge, for defendants-appellants.

Jimmie R. Major, Baton Rouge, for Baton Rouge Tin Shop, Henry C. Viccinelli, Henry V. Viccinelli and Albert J. Hebert, partners, called in warranty by Mid-states Const. Co.

J. Burton LeBlanc, Jr., Ashton L. Stewart, Baton Rouge, for plaintiffs-appellees.

Harry J. Kron, Jr., Baton Rouge, for Consolidated Roofing Co. called in warranty.

SIMON, Justice.

Plaintiff instituted this suit against the defendants, Belfair Homes, Inc.,[1] Mid-States Construction Company, its partners, Martin L. Laird, Jr., and Thomas O. Wells, and its insurer, American Motorists Insurance Company, for damages, in solido, on alleged noncompliance with building plans and specifications and resultant defects in the construction of a dwelling purchased by him from Belfair Homes, Inc.

1. A Louisiana Corporation whose 1,000 shares of stock are owned by Martin L. Laird, Jr., T. O. Wells and Carl Kellogg, in proportions of 499 shares, 500 shares and 1 share, respectively.

By supplemental and amended petition plaintiff itemized the defects and noncompliance with the plans and specifications alleged. Exceptions of no cause or right of action were filed by all defendants, which were overruled insofar as Belfair Homes, Inc., and Mid-States Construction Company were concerned, but sustained as to American Motorists Insurance Company. On appeal [2] we reversed the trial court's ruling and remanded the case to the district court for hearing on its merits as against all defendants. Whereupon, plaintiff having filed a second supplemental petition against Belfair and Mid-States, filed a similar pleading against American Motorists Insurance Company, both pleadings adding two complaints, paragraph 40 (A), subparagraphs (d) and (j), which on objections filed by defendant were stricken from the record.

Upon trial on the merits the district court rendered judgment in favor of plaintiffs and against all defendants, in solido, in the sum of $1,485, together with legal interest from date of judicial demand until paid; and in favor of Mid-States Construction Company on its call in warranty against Baton Rouge Tin Shop, an ordinary partnership composed of Albert J. Hebert, Henry V. Viccinelli and Henry C. Viccinelli, in the sum of $230.

Defendants and warrantor have appealed from said judgment; and plaintiff has answered said appeal praying that the lower court's judgment be amended by increasing the amount awarded to him from $1,485 to $5,931.50, and further that the judgment be reversed insofar as his claims set forth in paragraph 40 (A), subparagraphs (d) and (j) of his second supplemental and amended petition were stricken, and that the cause be remanded for trial of the claims presented therein.

Defendants-appellants have filed a motion to strike said answer, contending that the appeal lodged in this court is only from the final judgment rendered against them and that no appeal has been taken from the judgment of the district court striking the said subparagraphs from plaintiff's second supplemental and amended petition, and that, therefore, plaintiff's prayer for a reversal of the judgment striking said subparagraphs should be dismissed, relying on the case of Howard v. Toye Bros. Yellow Cab Co., 226 La. 346, 76 So.2d 391.

In the Howard case the suit against defendant Ernest Guillory, relator therein, was dismissed on an exception of no right or cause of action. After a trial on the merits judgment was rendered in favor of the plaintiff and against Mrs. Shirley Guillory in the amount sued for, and the other defendants were absolved from liability. Plaintiff and defendant Mrs. Shirley Guillory obtained separate orders of appeal to the Orleans Parish Court of Appeal, which court in due time reversed the judgment of

2. Breaux v. Laird, 223 La. 446, 65 So.2d 907.

the lower court only insofar as it had dismissed plaintiff's suit as against exceptor, Ernest Guillory, and condemned him in solido with Mrs. Shirley Guillory. On review before us, we concluded that, no appeal having been taken from that part of the judgment dismissing plaintiff's suit as against Ernest Guillory on exception of no cause or right of action, the Court of Appeal was in error in reviewing same. We held that an appellate court will not review a judgment sustaining exceptions thereby dismissing part of the demand when the appeal is taken by the defendant merely from the judgment rendered on the merits, citing Stansel v. Roberts, 35 La.Ann. 885.

The principles announced in the Howard and Stansel cases, supra, are sound law. The basis for the principle announced in the Stansel case was that the plaintiff-appellee had simply prayed for the affirmance of the judgment rendered below.

In the case at bar the defendants appealed from the judgment rendered by the trial court on the merits, and plaintiff has answered this appeal and seeks more than an affirmance of the judgment appealed from. He prays that the said judgment be amended by increasing the amount awarded to him to the amount originally prayed for; and further, that it be reversed insofar as his claims set forth in his second supplemental and amended petition were stricken and that the cause be remanded for hearing on said claims presented therein.

The record discloses that the two items ordered stricken were: (1) plaintiff's claim for an air conditioning system called for in the plans and specifications; and (2) the complaint of installation of screen doors of an inferior quality to those specified in the plans and specifications. Having stricken said allegations, the trial court refused to permit proof thereof at the trial on the merits.

▆▆▆▆ It is well settled in our jurisprudence that amendments to pleadings should be permitted where they tend to further justice, cause no injury and are without prejudice to the right of the other party. Should the other party plead surprise, he may obtain time to prepare adequate defense. Our modern-day tendency is to relax the technical rules of pleading in order to arrive at the truth, afford a litigant his day in court and avoid a miscarriage of justice. This court has consistently recognized the right of the plaintiff to amend his petition with the leave of court, after issue joined, provided the amendment did not assert a demand different from the relief first sought or change the substance of the demand. Code of Practice Article 419; Coleman v. Continental Bank & Trust Co., 139 La. 1078, 72 So. 742; Ruiz v. American Trading Co. of New Orleans, 167 La. 28, 118 So. 597; Seale v. Stephens, 210 La. 1068, 29 So.2d 65; Messersmith v. Messersmith, La., 86 So.2d 169.

▆▆▆▆ The trial court correctly permitted plaintiff to file the supplemental petition.

However, we feel it committed error in striking from the pleadings, upon objection by the defendants, the two items set forth in paragraph 40 (A), subparagraphs (d) and (j) of the supplemental petition.

Defendants contend that the second supplemental and amended petition filed herein changes the issue, injecting new and different matters. We are constrained to hold that the nature of the demand has not been changed from that originally asserted, either in substance or in law. The original demand is for damages, having as its cause of action the noncompliance with building plans and specifications as originally alleged. The defects alleged in the two subparagraphs are merely complaints which are incidents of and not inconsistent with or exclusive of the cause of action originally asserted. Though the ultimate moneyed demand has been increased, the cause of action and the very substance and nature thereof which give rise to this litigation has not been changed. This second supplemental petition was filed prior to a hearing on the merits, and in view of our modern-day tendency to relax the rules of pleading we find no possible prejudice occasioned these defendants in that respect.

Defendants also contend that the deviations and defects alleged in the said paragraph 40 (A), subparagraphs (d) and (j), are of such a nature as plaintiff would have had knowledge thereof at the time of filing his first supplemental and amended petition, under court order, and that his failure to have included them therein constitutes a waiver and abandonment thereof. This contention was also raised by defendants before the lower court in their motion to strike.

■■ Though there are various definitions of the term "waiver", it can be comprehensively defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed. It is recognized that the terms "waiver" and "estoppel in pais" are closely related, the line of demarcation between them being slight, both partaking of the same elements and essentially the same relief.

■■ The doctrine of waiver or estoppel contravenes the legal rights of the person sought to be estopped, and in some instances stays the operation of the usual proceedings in the adjustment of rights of individuals and for that reason should, in every instance, be applied with great care and caution. Our courts and other jurisdictions universally hold that this doctrine should be applied only in exceptional cases where its application is necessary to effectuate justice or prevent injustice, and should not be applied where it will serve as an instrument of, or operate as, a fraud, be against good conscience, work injustice or accomplish a wrong. Gonsoulin v. Equitable Life Assurance Society of the United States, 152 La. 865, 94 So. 424; C.J. Sec., Vol. 31, p. 242 et seq.; 42 C.J.S. p. 380.

The promotion and enforcement of fair dealing and the prevention of undue advantage are equally involved in the application of the equitable doctrine of waiver or estoppel, and pleas of this doctrine can be of no avail to the party urging same unless he has been clearly misled to his detriment or injury by the actions or conduct of the party against whom the plea is urged. In re Clover Ridge Planting & Mfg. Co., Inc., 178 La. 302, 151 So. 212.

In the case at bar the record fails to disclose any act or conduct on the part of the plaintiff which would warrant the application of this doctrine as urged by defendants.

Defendants also contend that the judgment of the lower court striking from the record said two subparagraphs of the second supplemental and amended petition was not appealed from by plaintiffs and is therefore not reviewable by this court.

In the case of Three Way Finance Co. v. McDonald, 213 La. 504, 35 So.2d 31, we announced that the rule that an appeal is not allowed from an interlocutory decree unless it is one which may cause irreparable injury is based on the fact that the law does not favor the interrupting of judicial proceedings by appealing from such decrees. Code of Practice Article 566. Also, see Feitel v. Feitel, 169 La. 384, 125 So. 280; Painten v. Pilie, 198 La. 713, 4 So.2d 804; Reeves v. Barbe, 200 La. 1073, 9 So.2d 426; In re Canal Bank & Trust Co., 216 La. 410, 43

So.2d 777; Succession of Willis v. Willis, 229 La. 293, 85 So.2d 520.

In the instant case the judgment striking the two subparagraphs was and is an interlocutory judgment which the record shows caused no irreparable injury to plaintiff and therefore was not appealable.

Our law provides that where an appeal has been duly returned the appellee must appear within the delay prescribed and file his answer seeking an affirmance of the judgment of the inferior court, Code of Practice Article 591, but that "Nevertheless, if the appellee complain of some parts of the judgment of the inferior court, he may, without appealing from the same, pray it to be set aside in those points in which he believes that he is aggrieved." Code of Practice Article 592.

In the case of Lange v. Baranco, 32 La. Ann. 697, at page 699, in answer to plaintiff's objection to the trial of the case in this court as regards the reconventional demand, on the ground that the defendant did not appeal from the judgment dismissing that demand, we said:

"It was unnecessary that she should do so. A judgment is the solemn adjudication of a court, established by law, made in a suit upon the relative claims of parties thereto, as disclosed by the record, and which passes on the matters so presented for determination. When it decides the issues submitted, it is an entirety, and, strictly, is indivisible; not so, however, as

to compel a party who is only partly benefited to appeal from the judgment in his behalf. It may be rendered partly in favor of or against a litigant, and partly in favor of or against others. The party who appeals, whoever he be, theoretically brings up the entire judgment for revision to the appellate court; absolutely, as far as it aggrieves him, and conditionally as it affects others who are the appellees, and who can ask that the judgment, as to them, be re-examined and reformed. The Code of Practice, art. 888, recognizes undoubtedly this theory, by permitting expressly the appellee, in his answer, when seasonably filed, to ask a reversal in part and a confirmation in part, as he may choose to do.

*"The whole judgment is therefore before us for review."* (Italics ours.)

In Alengi v. Hartford Accident & Indemnity Co., 183 La. 847, 165 So. 8, 10, we said:

" * * * It is difficult to understand how the appellant, by limiting his appeal, can deprive the appellee of the rights, granted him by articles 592 and 888 of the Code of Practice, to have the judgment reviewed in the respects complained of in the answer to the appeal, without appealing. A mere reading of those two articles clearly shows that it was never contemplated that the appellee's right to have the judgment reviewed, by answering the appeal, could be taken away from him by the appellant appealing only for an express and specific, or limited purpose."

■ Accordingly, in view of the foregoing, we shall review the entire record.

The record discloses that by a recorded written contract dated November 22, 1946, and bonded by defendant American Motorists Insurance Company, Mid-States Construction Company agreed to construct for Belfair Homes, Inc., 53 reinforced concrete type dwelling units in accord with plans and specifications prepared by Carl Kellogg, architect.

On December 2, 1946, Belfair agreed to sell Lot No. 95, with improvements thereon, to plaintiff, and accordingly undertook to have a dwelling constructed thereon in accord with the said plans and specifications referred to in said agreement as No. 155 P, Elevation Q, prepared by Carl Kellogg, and exhibited to plaintiff. In consideration of the payment of $8,500 cash, Belfair sold and transferred said lot and improvements thereon to plaintiff by a duly recorded authentic act of sale dated December 3, 1947.

Plaintiff began occupancy of said home in October, 1947, prior to its completion, with the understanding that its construction would be completed by the vendor. At the time of the sale, December 3, 1947, plaintiff was again assured that the construction work would be completed.

On August 10, 1949, plaintiff filed suit against his vendor, the vendor's contractor

and the contractor's surety for damages, alleging noncompliance with and deviations from plans and specifications in the construction of the premises purchased by him.

Defendants strenuously denied liability, contending that the plans and specifications submitted and considered by the court in the light of plaintiff's complaint were not the ones used in the construction of plaintiff's dwelling, but that original drawings of said plans had been changed and amended by oral mutual consent of the owner and the contractor (Belfair and Mid-States), and, further, that the house purchased by the plaintiff from Belfair Homes, Inc., was constructed in substantial compliance with the contract and the plans and specifications as so changed and amended. Defendants have failed, however, to procure and produce the plans and specifications they allege to have been used, despite orders of subpoenas duces tecum against them to produce same. Every effort and means available by judicial process was exerted by plaintiff to force defendants to produce the specifications in their possession or in the possession of their agents, without avail. We note with regret the comment of the trial judge during the course of the trial that "The court gets a very definite impression that the defendants in this case could produce plans and specifications, * * * and they have been called upon to do so, and it is just not the cooperation that I have been taught to believe should exist in the trial of lawsuits."

The best evidence rule requires that the highest degree of proof of which a case from its nature is susceptible must, if accessible, be produced. If the best evidence cannot be produced, then secondary evidence becomes admissible. The primary evidence of the plans and specifications as changed and amended, as alleged by defendant, in the instant case was not accessible; therefore the secondary evidence rule became applicable. Moreover, the primary evidence was or should have been in defendants' possession, and their failure to produce it was the occasion and created a necessity for resorting to secondary evidence. Under such circumstances defendant cannot be heard to complain of the character of such evidence, the quality and weight of which rests with the trial judge. Merritt v. Wright, Williams & Co., 19 La. Ann. 91; Hotard v. Texas & Pacific Ry. Co., 36 La. Ann. 450; Franklin v. First African Baptist Church, 2 La.App. 698.

Plaintiff produced and offered in evidence the plans and specifications in his possession as well as in the possession of others considered to be pertinent to the issues in the case, and he was under no duty to produce the records of which the defendants were, or should have been, the custodians. Thus the trial court correctly received in evidence the plans and specifications tendered by plaintiff as copies of those re-

ferred to in the construction contract between Belfair and Mid-States.

Defendants also contend that there had been an acceptance of the building contract by Belfair, and therefore all rights to re·cover for failure of the contractor to perform according to the terms of the contract had been waived. They contend that plaintiff's house was constructed under the personal direction of Belfair Homes, Inc., supervised by the Federal Housing Administration, both of whom had approved and accepted the work prior to the sale to plaintiff; that, therefore, should any part of it have been defective either in workmanship ·or materials, or should there have been any substantial deviation from the building contract, plans and specifications, Belfair, as owner, had or should have had full knowledge thereof at the time of its acceptance ·of the work. The building contract between Belfair and Mid-States was accepted in writing by Belfair on August 11, 1948, and recorded, whereas, Belfair had by act ·of sale on December 2, 1947, transferred its right, title and interest in and to said property to plaintiff and was, therefore, not ·owner of said property to make effective any purported acceptance on that date. We are not impressed with defendants' contention that there had been an oral acceptance prior to the sale to plaintiff.

Defendants' contention that by taking possession and moving into the house plaintiff thereby accepted the building contract and waived all rights to institute this suit is equally without merit.

The record discloses that plaintiff sold a home in which he had been living and surrendered possession thereof to the purchaser. He and his wife resided with relatives awaiting the completion of the dwelling herein involved. They began occupancy thereof prior to its completion to supply their urgent need for a home and for the further reason that the payment of the purchase price would afford defendant with the means with which to complete the construction. Under the circumstances it cannot be said that plaintiff voluntarily and intentionally waived or abandoned his known existing legal rights, benefits or claims. In fact, it was agreed that the vendor would complete the construction of the home. Plaintiff had no knowledge of the extent of the inferiority of the material and workmanship as complained of herein. He did not accept such inferior work by mere occupancy under the circumstances stated. The very essence of waiver which can result only from the intentional relinquishment of a known right is not present.

The case of Michel v. Efferson, 223 La. 136, 65 So.2d 115, 119, involved a suit to recover from a building contractor and his bondsmen the amount required to remedy faulty construction. The defendants therein contended that the plaintiff had waived whatever claims she had for the defective construction at the time she accepted the

building. On rehearing we held that plaintiff was entitled to recover, saying:

"It appears that the plaintiff observed some defects in the construction of the building a few days before she accepted it and that a meeting was held at her instance with the contractor and his bondsmen, wherein certain defects in the construction of the building were discussed and that a list of the defects was drawn up by the agent of the bondsmen. This list was turned over to the contractor with the understanding that the defects would be corrected. This list was not presented in evidence and the testimony is very indefinite as to the defects enumerated therein and whether or not they have been corrected. If these defects were corrected, the ones now complained of were not included therein. If, on the other hand, they were not corrected, the contractor has not fulfilled his obligations. In any event, the contract has not been complied with. Much stress has been made over the fact that the plaintiff had knowledge that the plaster was defective in the downstairs portion of the house when she accepted the building and stated that she guessed she would have to 'swallow the plaster.' While the plaintiff knew there were some defects in the plaster in the downstairs portion of the house, yet we do not believe she would have accepted the building had she known the extent of

the defects which were later ascertained by the independent contractors. She could not have known at the time she accepted the building about the defective plaster in the upstairs portion of the building because her testimony, that she did not go upstairs on account of her illness, is not contradicted. It is not shown that she had knowledge at that time that certain materials were omitted or that inferior materials had been substituted for those called for in the specifications.

\* \* \* \* \* \* \*

"The defense of waiver is a special one and the burden of proof is on the defendants to show that the plaintiff had knowledge of the defects in construction and that she intentionally waived same.

"The courts of this state have held that an owner is not estopped from claiming damages for the breach of a building contract by taking possession and moving into the building. The failure of the contractor to construct the building in accordance with the plans and specifications was a violation of the contract and the taking of possession of the premises by the plaintiff can not be considered as a discharge of the defendants' liability. Lobdell v. Parker, 3 La. 328, 331; Morton v. Pollard, 9 La. 174; Overton v. Simon, 10 La.Ann. 685; Miller v. Stewart, 12 La. Ann. 170; Nicholson v. Desobry, 14

La.Ann. 81; Conery v. Noyes, 17 La. Ann. 201; Gordy v. Veazey, 25 La. Ann. 518; Levy v. Schwartz, 34 La. Ann. 209; Borrosky v. Hill, Harris & Co., Inc., 1 La.App. 431; Payne & Joubert v. Amos Kent Brick & Lumber Co., 110 La. 750, 34 So. 763; Police Jury [of Parish of Vernon] v. Johnson, 111 La. 279, 35 So. 550; Di Franco v. Ascani, 13 La.App. 2, 127 So. 76. * * *"

█ Plaintiff's complaint of incomplete and defective work was itemized in paragraph 40 (A) of his second supplemental and amended petition, and the lower court in its analysis of the evidence adduced presented its conclusion as to each item therein complained of. The able and learned trial judge saw and heard the witnesses as well as personally visited and inspected plaintiff's premises and has given us the benefit of his superior opportunity for observation as disclosed in his written reasons for judgment wherein his analysis of the facts from a voluminous record has been of material help to us. We find no manifest error therein.

Warrantor-appellant does not sustain its contention, in law or in fact, that the judgment of the lower court in favor of defendant Mid-States and against Baton Rouge Tin Shop and its individual partners should be reversed.

In reurging the contention that plaintiff does not have a cause of action against his vendor for breach of warranty and against the vendor's contractor and its surety in solido, defendant cites the case of Cipriano v. Superior Realty & Construction Corporation, 228 La. 1065, 84 So.2d 822. This case is not applicable to the case at bar, being based on fundamentally different factual situations. In the Cipriano case plaintiff sued for a breach of warranty under a contract of sale between him and Superior; whereas, in the instant case plaintiff sues to enforce a contract made for the improvement of property by Belfair, from whom he acquired said property. LSA–Civil Code Article 2011; Breaux v. Laird, supra. Plaintiff's suit is also to enforce an agreement by the terms of which Belfair agreed to have a dwelling constructed on Lot No. 95, in accord with the plans and specifications referred to in said agreement and exhibited to plaintiff, being the same plans and specifications referred to in the building contract.

Accordingly, for the reasons assigned, the judgment appealed from is amended so as to include damages claimed in subparagraphs (d) and (j) of paragraph 40(A) of plaintiff's second supplemental petition, and for determination of said damages this case is remanded for trial by the district court in accordance with law; and in all other respects the judgment of the district court is affirmed; all costs to be paid by defendants.