SAMUEL, Judge.
Plaintiffs, former general partners in the brokerage firm of Kohlmeyer & Company, filed suit against defendants, Alden H. Vose, Jr., individually and as executor of *1278 the estate of Charles B. Vose, and the New York Stock Exchange, Inc., seeking to enjoin arbitration before the Board of Arbitration of the New York Stock Exchange regarding the capital accounts of Kohlmeyer & Company in Liquidation. Defendants answered, denying plaintiffs’ right to in-junctive relief.
Following trial, there was judgment denying plaintiffs’ prayer for injunctive relief. Plaintiffs have appealed from that judgment.
Kohlmeyer & Company was a Louisiana partnership in commendam. It did business primarily as a stock brokerage and underwriting firm. Its principal place of business was in New Orleans, and it was a member of the New York Stock Exchange, Inc. On October 5, 1973, the general partners voted to liquidate the partnership. Among the liquidators appointed to wind up the partnership affairs were Alden H. Vose, Jr., a defendant, and his brother, Charles B. Vose. On April 22,1974, Charles B. Vose died and in due course Alden H. Vose, Jr. was appointed executor of his estate.
On April 29,1974, two of the plaintiffs in this suit, Eli W. Tullís and Edward F. Creekmore, Jr., filed suit against the partnership in liquidation and its liquidators under the Louisiana Blue Sky Law seeking rescission of certain Secured Demand Notes and Secured Demand Note Collateral Agreements given by them to the partnership. These notes and agreements will be mentioned later in this opinion.
On May 24,1974, the same plaintiffs filed suit against the partnership in liquidation and its liquidators seeking, among other things, an audit of the books of the partnership, homologation of the auditors’ report, and a mandate that the liquidators sue all deficit partners to collect the sums by which they were in deficit.
Finally, on April 25,1975, the partnership in liquidation filed a petition to arbitrate a dispute between it and defendant Vose with the Board of Arbitration of the New York Stock Exchange to determine whether memberships of Alden H. Vose and the estate of C. Baldwin Vose in the New York Stock Exchange and New York Cotton Exchange were assets of the partnership in liquidation. Vose answered the petition for arbitration and asserted various counterclaims against numerous persons including the three plaintiffs in this suit. These counterclaims, also to be determined by arbitration, sought (a) dismissal of the partnership’s claim or determination of the proper amounts due by Vose and his late brother to be charged to their respective capital accounts in the partnership, (b) adjustment of the partnership books to eliminate any charges to the account of Charles B. Vose after his death and treatment of amounts owed Charles B. Vose as a partnership debt, and (c) establishment of the deficit of each partner and payment by each partner to the partnership in liquidation to satisfy claims of subordinated lenders and creditors.
Plaintiffs herein objected to arbitration of the subject matter of the counterclaims in New York, and consequently filed this suit to enjoin the arbitration proceedings.
The central issue for our determination is whether plaintiffs agreed to arbitrate the issues stated in the above-enumerated counterclaims before the Board of Arbitration of the New York Stock Exchange or whether they are entitled to have the subject matter of the arbitration determined by the courts of Louisiana.
Revised Statute 9:4201[1] provides arbitration agreements are valid as follows:
“A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” (Emphasis added).
*1279 In the process of becoming a general partner of Kohlmeyer & Company, each of the plaintiffs executed an application for membership status in the New York Stock Exchange. All three applications were approved by the Exchange, and each of the plaintiffs was recognized as an allied member of the Exchange. Each application contained the following provision:
“I further state that I have read the Constitution and Rules of the Board of Governors of the New York Stock Exchange and I hereby make application to become an allied member of the Exchange. I hereby pledge myself to abide by the Constitution and Rules of the Board of Governors of the New York Stock Exchange as the same have been or shall be from time to time amended, and by all rules and regulations adopted pursuant to the Constitution, this pledge to become effective in the event of, and forthwith upon, the approval of this application.”
The constitution of the New York Stock Exchange[2] provides “Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party ... be submitted for arbitration, in accordance with the provisions of the constitution and rules of the Board of Directors” of the New York Stock Exchange. At all pertinent times Kohlmeyer & Company was a member of the New York Stock Exchange.
On June 2, 1972, the Exchange revised certain rules dealing with capital contributions by partners of member firms. In order to document the amount of capital contributed to the partnership by each partner, the Exchange ruled that partners’ capital contributions could no longer be represented directly by securities after June 1, 1973, but would have to be in the form of a Secured Demand Note, secured by pledge of securities of a specified market value accompanied by a Secured. Demand Note Collateral Agreement on forms prescribed by the New York Stock Exchange. Such documents were executed by plaintiffs, Tullís and Creekmore, on April 6, 1973.
Paragraph XII(e) of the Secured Demand Note Collateral Agreements executed by them specifically provides that “any controversy arising out of or relating to this Agreement or the breach thereof, shall be submitted and settled by arbitration pursuant to the Constitution and Rules of the Exchange.” This provision further contained language that the “parties hereto and all who make claim under them shall be conclusively bound by such arbitration.”
Of particular importance is Article XVI(b) of the partnership agreement of Kohlmeyer & Company, which requires all partners to abide by the rules and regulations of any exchange of which the partnership or any partner may be a member. The partnership agreement provided a partner could be required to withdraw involuntarily from the partnership if he violates any such rule or regulation of a member exchange. As above stated, at all times pertinent to this suit the partnership was a member of the New York Stock Exchange, and its constitution required its members to arbitrate disputes among them as set forth above.
Plaintiffs contend that as a matter of law they are not obligated by the arbitration agreements in the above documents, citing three court decisions in support of their argument. Plaintiffs first rely on Stone v. Stone,[3] which stands for the proposition that a partner cannot be deprived of his right to legally dissolve a partnership by a provision of the Articles of Partnership requiring arbitration of disputes. The court held that as a partnership may be dissolved as a matter of right, there was nothing for an arbitrator to decide. It basically relied upon the last phrase of R.S. 9:4201 which validates arbitration agreements “save upon such grounds as exist at law or in equity for the revocation of any contract.” Since the partnership agreement in the Stone case could be dissolved at the will of either party, there existed a ground for *1280 revocation thereof and the arbitration provision could not be invoked.
Even accepting the fact that the Stone case stands for the proposition that a provision to arbitrate the liquidation of a partnership is invalid, Stone does not apply in the present case because Kohlmeyer & Company was dissolved on October 5, 1973 by a vote of the general partners, including plaintiffs, pursuant to Article XVIII of the partnership agreement. In addition, the Stone decision is not authority for granting a partner or former partner the right to avoid arbitration of matters involving amounts owed to or by his capital account in the process of winding up the affairs of the partnership. On the contrary, the national composition of the New York Stock Exchange and the far-reaching effect of the Exchange on the economy of this country clearly demonstrate a public interest in the Exchange and its members in the uniform and ethical composition of each member to protect the Exchange, its members, and the general public from being preyed upon by undercapitalized or capital-drained members who might use their membership to exploit the public and irrevocably destroy public confidence therein. There is neither theoretical nor practical reason why the capital accounts of individual partners of a member firm of the New York Stock Exchange cannot be validly subjected by agreement in advance to arbitration.
Plaintiffs further rely on Wilson v. King,[4] which held a dispute on a promissory note owed by one member of the New Orleans Cotton Exchange to another member was not subject to a Cotton Exchange rule requiring submission of disputes between exchange members to arbitration. The court stated the suit was basically one on a contract and did not involve a dispute concerning the internal affairs of a voluntary association or a dispute between members arising out of their membership or activities in such an association. Applying this reasoning to the present case, there is no doubt the suit by plaintiffs against defendants on a private transaction unrelated to partnership business would not be subject to arbitration under the constitution and rules of the New York Stock Exchange. But here the issue is one of the composition of the partners’ .capital account in which the Exchange has a direct and vital interest; it is a dispute in which the Exchange is involved.
Finally, plaintiffs rely on the United States Supreme Court case of Wilko v. Swan[5] That ease involved an action by a customer against a brokerage firm which was a member of the Exchange to recover damages under Section XII (2) of the Securities Act of 1933 for fraud and misrepresentation in the sale of securities. While the court stated concern with an arbitrator’s lack of knowledge of the meaning of certain provisions of the Securities Act which have come to be terms of art, the decision declaring the Exchange’s arbitration provision inapplicable was based on Section 14 of the Securities Act of 1933 which prohibits the waiver of any provision of that statute. In effect, the Supreme Court stated a person could not agree to arbitration under Section 14 of the Securities Act and thereby waive his right to sue for damages in a court of competent jurisdiction. Thus, the Wilko case does not support plaintiffs’ position.
Plaintiffs further argue they did not knowingly and voluntarily agree to submit their disputes to arbitration when they made application for allied membership in the Exchange. They cite various cases on the definition of waiver,[6] emphasizing the necessity for a knowing and intentional relinquishment or abandonment of a right. However, in applying for allied membership in the Exchange, plaintiffs admit they have read the constitution and rules of the Exchange, and there is no doubt that constitu *1281 tion provides for arbitration in matters such as those here sought to be enjoined. Even stronger are the signatures of the two plaintiffs on the Secured Demand Note Collateral Agreements, which contain the arbitration agreement in the body of the contract. In view of the knowledge and experience of plaintiffs in the business world in general and the brokerage field in particular, there is little to support the argument that they unknowingly agreed to submit said matters to arbitration.
Finally, plaintiffs attempt to assert injustice and unequal results will result by having the arbitration proceeding pending in New York during the pendency of plaintiffs’ suit for an audit of the books of the partnership and for a mandate to collect balances due from deficit partners.[7] However, contrary to this assertion and its implications, the litigation pending in Louisiana is not a proceeding for the dissolution and liquidation of Kohlmeyer & Company; it contains a relatively narrow prayer involving deficit partners and other particular and specific aspects of the partnership’s affairs. The content and result of the arbitration proceeding would seem a necessary precedent to a definitive judgment in plaintiffs’ other suit.
As a matter of public policy, arbitration agreed to in advance of disputes is favored in law.[8] Since the liquidation of the partnership has been voted upon and is an accomplished fact, there is nothing in the arbitration proceedings which makes it repugnant to Louisiana law. On the contrary, the Exchange has an interest in determining that certain aspects of the capitalization of its member firms be treated uniformly, and the arbitration proceedings sought to be enjoined is not inconsistent with that end. Plaintiffs knowingly agreed to arbitration of certain disputes, including the capital accounts of their partnership, as an incident to their memberships in the Exchange, and nothing has been shown or argued to us which justifies enjoining defendants from going forward with the arbitration proceedings.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. LSA-R.S. 9:4201. This provision and others in the Louisiana Arbitration Law supplement Civil Code Articles 3099-3132.

. Section 1, Article VIII.

. La., 292 So.2d 686.

. La.App., 145 So.2d 128.

. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

.Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Breaux v. Laird, 230 La. 221, 88 So.2d 33; Michel v. Efferson, 223 La. 136, 65 So.2d 115.

. This is the suit filed on May 24, 1974 mentioned above.

. See, for example, O’Dell v. International Paper Company, La.App., 262 So.2d 101; Wright v. Round the Corner Restaurants of La., Inc., La.App., 252 So.2d 341.