84 So.2d 822

Frank J. CIPRIANO

v.

SUPERIOR REALTY & CONSTRUCTION CORPORATION and Clifford W. Sherman, Jr.

No. 41959.

Dec. 12, 1955.

Rehearing Denied Jan. 16, 1956.

Bienvenu & Culver, Lenfant & Villere, New Orleans, P. A. Bienvenu, New Orleans, of counsel, for plaintiff-appellant.

Adams & Reese, New Orleans, W. Ford Reese, New Orleans, of counsel, for defendant Aetna Casualty & Surety Co.

Deutsh, Kerrigan & Stiles, New Orleans, Gerald J. Gallinghouse and Albert J. Flettrich, New Orleans, of counsel, for defendants-appellees.

HAWTHORNE, Justice.

Frank J. Cipriano instituted this suit to recover an in solido judgment against defendants, alleging that a house which he purchased from one of the defendants was partially destroyed by a fire which started in a wall heater and that the heater was either defective when installed or had been improperly installed. His main demand is for $8,592.48 for breach of warranty, which he itemizes as follows: $5,021.33 as a reduction in the purchase price of the house, $1,071.15 as damages for the loss of several items of furniture destroyed by the fire, and $2,500 as legal expenses. In the alternative he prays for judgment against all defendants in solido in the sum of $6,092.48 as damages caused by the fire which he alleges resulted from the negligence of the defendants in installing a defective heater or in installing the heater in a defective manner.

It will thus be seen that plaintiff's main demand is one for diminution of the price of the dwelling, together with damages and repayment of expenses incurred, because of a vice in the house when sold, and that his alternative demand is one in tort to recover damages caused by the defendants' negligence.

The pertinent facts in this litigation are these: In February, 1951, Superior Realty & Construction Corporation entered into a contract with Clifford W. Sherman for the construction of a house on a lot owned by Superior in the City of New Orleans. The Continental Casualty Company was surety on this contract for Sherman. The contractor built the house, installing in it a Payne Panelair Forced Air Wall Heater. Superior accepted the house when completed and sold it through a building and loan association to Cipriano.[1] After Cipriano had occupied the house for about two months, the heater was lighted, and during his absence the dwelling caught fire and was damaged.

Cipriano filed this suit naming as defendants Superior Realty & Construction Corporation, which was the owner of the

property at the time the house was built and which sold it to plaintiff; Clifford W. Sherman, Jr., the contractor who constructed the house for Superior prior to its sale to plaintiff; Continental Casualty Company, surety for the contractor for the faithful performance of the contract and payment of laborers, etc.; and Aetna Casualty & Surety Company, the liability insurer of Affiliated Gas Equipment Company, Inc., manufacturer of the heater.

Defendants all filed answers which are in substance general denials of the allegations of plaintiff's petition. Several of the defendants called each other in warranty, but it is not necessary for us to set out these pleadings except to state that Superior, plaintiff's vendor, prayed that its rights be reserved against Continental, surety on the contractor's bond, for any loss or damage that it might sustain because of these proceedings.

After trial on the merits plaintiff's suit was dismissed in its entirety, and he appealed.

We are convinced that the lower court erred in dismissing plaintiff's main demand as against all defendants, for in our opinion his action for reduction of the purchase price against defendant Superior Realty & Construction Corporation, his vendor, is well founded. However, we agree that the judgment dismissing the suit as to all other defendants is correct.

Plaintiff's main demand grows out of a contract of sale and is founded upon an alleged breach of warranty by his vendor, Superior. He has no right of recovery on this main demand against any of the other defendants because there was no relationship of vendor and vendee existing between them and him. Although his alternative demand in tort might have merit, this demand passes out of the case when we conclude that plaintiff is entitled to recover from his vendor on his main demand. An alternative demand is made only on the condition that the demand first made should not be granted. See Haas v. McCain, 161 La. 114, 119, 108 So. 305.

The law applicable to plaintiff's main demand is found in the articles of our Civil Code under Title 7, Of Sale, Chapter 6, Of the Obligations of the Seller. Under this law the seller is obliged to warrant the thing which he sells. Art. 2475. The sale may be avoided for some vice or defect in the thing sold which renders it absolutely useless or its use so inconvenient and imperfect that it might be supposed that the buyer would not have purchased it had he known of the vice, and a suit for this purpose is called a redhibitory action. Art. 2520. This action will not lie for apparent defects. Art. 2521. The buyer who institutes such an action must prove that the vice existed before the sale was made to him. Art. 2530. Under the provisions of Article 2541, whether a defect in the thing sold be such as to render it useless and altogether unsuited to its purpose or whether it be such as merely to diminish the value, the buyer

may limit his demand to an action for reduction of the price, which is the action plaintiff instituted here. This action, under the provisions of Article 2544, is subject to the same rules and to the same limitations as the redhibitory action. In such an action the seller who knows of the vice of the thing he sells and omits to declare it, besides the restitution of the price and the repayment of the expenses, is answerable to the buyer in damages. It is under the provisions of this article that plaintiff in his main demand seeks to recover damages for the loss of the furniture and his legal expenses. This action must be instituted within one year at the furtherest commencing from the date of the sale.[2] This limitation, however, does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser. Art. 2534.

The proof in this case is overwhelming that the fire which damaged the house purchased by plaintiff from Superior was caused by a wall heater which had been installed in a small closet in the dwelling by the vendor's contractor before the sale of the house to plaintiff. It was also established to our satisfaction that the plaintiff himself was free of fault, and that he had not tampered with the heater.

The type of heater involved in this case is a gas-burning heater, thermostatically controlled, in which the burned gas is vented and the heat transmitted through fans which blow the heated air through a register into the area of the house to be heated. The fans are driven by electric motors, and this blower system is essential to the proper operation of the heater. If the blower system fails to function and if the heater continues to burn, there is a tremendous build-up of heat within the heater itself, sufficient to set fire to any combustible material in the area. If the motors of the fans are to operate, an electric plug must be inserted into an outlet installed in the heater enclosure.

We are convinced that on the occasion of the fire this electric plug had not been inserted in the electric outlet and that consequently the blower fans were not in operation. Moreover, for some reason the safety devices which should have cut off the main gas burner in such an emergency failed to operate, and thus there resulted a build-up of heat in the unit itself which caused the fire that damaged plaintiff's house.

After the fire the heater was examined by an expert from Shilstone Testing Laboratory, who found a number of defects in it. For example, the diaphragm in the low pressure regulator was ruptured and this caused it to leak gas; the vent tube from the low pressure regulator did not ex-

---

2. In the instant case plaintiff instituted his suit a little more than a year from the date of the sale. However, defendants have not pleaded the prescription of one year, and it is well settled that prescription must be expressly pleaded and that such a plea cannot be supplied ex officio by this court. See Succession of Thompson, 191 La. 480, 186 So. 1.

tend to the pilot light as it should have, but terminated an estimated 10 or 12 inches therefrom, directly over the B–60 valve; gas from the ruptured diaphragm escaped from this tube and burned over the B–60 valve, causing it to become jammed due to excess heat so that it did not turn off the flow of gas to the burners as it should have.

This expert was unable to say with any degree of certainty which, if any, of these defects existed at the time the heater was installed or whether they resulted from or were caused by the fire. We likewise cannot determine this, but in any event it is immaterial because of other evidence in the case.

The evidence in this case proves conclusively that a proper installation of the heater should have included the connection of the electric motors which operated the blower system to the electric system of the house by the insertion of the plug in the electric outlet in the closet where the heater was installed. As we pointed out above, if this connection was not made, the blower system of the heater would not operate. In fact, the installation instructions furnished by the manufacturer call for making this connection. Thus the plugging in of the electric blower system is a necessary part of the permanent installation of the heater. This connection was never made. Also a correct installation of the heater calls for testing the heater in operation after it is installed to see that it is

functioning perfectly. Such an inspection shows whether defects exist in the heater or in its installation. No such test was ever made in the instant case.

■ Installation of the heater in the instant case was therefore defective because the heater was never connected with the electrical system and no test was ever made to ascertain whether it had been correctly installed and was free from defects. The heating system in this dwelling, due to its improper installation, was therefore not free of vices and defects at the time the house was sold to the plaintiff by the defendant Superior.

■ When a house is sold with a heating system already installed, the heating system forms as much a part of the house as does the foundation or the roof and is covered by the vendor's warranty. If this heating system proves to have hidden vices which existed at the time of the sale and which were such as to render it useless and unsuited for its purpose, the buyer has an action for redhibition or for diminution of the purchase price. Arts. 2520, 2521, La. Civil Code.

In the instant case we are convinced from the evidence that the defective installation of the heater could not have been ascertained by a simple inspection. Moreover, it could not be supposed that the plaintiff would have purchased the house had he known of the existence of this defective heating system. See Art. 2520,

La. Civil Code. Under these circumstances we think plaintiff is entitled to a diminution of the purchase price in the sum of $5,021.33, the amount alleged and proven to have been necessary to make the repairs to the dwelling damaged by the fire.

■ We do not think, however, that plaintiff is entitled to recover damages for the loss of his furniture and for legal expenses. There is no proof in this record that Superior had any knowledge of the vices and defects in the heating system at the time the house was sold to plaintiff. Art. 2545, La. Civil Code. The evidence shows that this building was constructed by an independent contractor under plans and specifications, and not by the vendor itself.

Plaintiff, in support of his right to recover the entire amount claimed as well as his right to recover from the contractor Sherman and the surety on his bond, cites and relies on Tuminello v. Mawby, 220 La. 733, 57 So.2d 666, and Breaux v. Laird, 223 La. 446, 65 So.2d 907. Neither of these cases, however, is pertinent here.

In the instant case there is no presumption that plaintiff's vendor, Superior, had any knowledge of the vices or defects existing in the thing sold, since that corporation did not construct the dwelling. This being so, plaintiff is not entitled to recover, in addition to the amount awarded him as diminution of the price, the items of damages and expenses for which he prays under Article 2545 of the Civil Code. Moreover, neither of those cases gives him the right to recover on his main demand against the contractor Sherman and Continental, surety on the building contract.

In Tuminello v. Mawby, the defendants composed an ordinary partnership. They had an arrangement by which one would purchase a lot and the other would build a house on it. The house would then be sold, and the profits, if any, divided between them. Such is not the fact in the instant case. Plaintiff alleged some such relationship between vendor and contractor here, but failed to prove it.

In Breaux v. Laird, we held that under Article 2011 of the Civil Code one who acquires immovable property will have the right to enforce a contract made for the improvement of the property by the person from whom he acquired it. In the instant case plaintiff is not attempting to enforce the building contract entered into between Superior and Sherman; that is, he is not attempting to avail himself of any right Superior may have had to enforce that contract. Here plaintiff is suing for a breach of warranty under a contract of sale between him and Superior. It is obvious, therefore, that the Breaux case and the one at bar are based on fundamentally different factual situations.

From the reasoning of the trial judge it would appear that he treated this case principally as one in tort, concluded that the doctrine of res ipsa loquitur was not applicable, and did not give much consideration to plaintiff's main demand. In this court counsel for all litigants argued and briefed this case as if it were one principally in tort, and devoted most of their argument, oral and written, to the question of whether the doctrine of res ipsa loquitur was applicable, and they made very little mention of plaintiff's main demand. However, since we have concluded that plaintiff is entitled to recover from Superior on his main demand, his alternative demand in tort passes out of the case.

The judgment appealed from is reversed insofar as it dismissed plaintiff's suit against the defendant Superior Realty & Construction Corporation, and it is ordered that plaintiff have judgment against this defendant in the sum of $5,021.33 with legal interest from judicial demand until paid. In all other respects the judgment of the district court is affirmed. The rights of defendant Superior, if any, are reserved against Continental Casualty Company, surety on the contractor's bond. All costs are to be paid by Superior Realty & Construction Corporation.

FOURNET, C. J., and PONDER, J., absent.