328 So.2d 722 (1976)
Norman P. BERMES
v.
Linda Payne FACELL.
No. 10639.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
*723 L. D. Sledge, Baton Rouge, for appellant.
C. J. Hyde, III, Baton Rouge, for appellee.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
LOTTINGER, Judge.
This is a suit by Norman P. Bermes, as petitioner, against Linda Payne Facell, as defendant, in which petitioner seeks recovery in the form of a diminution in price of a residence purchased from the defendant. The Trial Court rendered judgment in favor of petitioner and against defendant in *724 the amount of $1,350.00, together with interest at the rate of seven (7%) per cent per annum from date of judicial demand until paid and for all costs. The defendant has taken this appeal.
The evidence discloses that on June 25, 1973, the petitioner purchased from the defendant a house located at 1777 Bellrose Drive, Sherwood Forest Subdivision, East Baton Rouge Parish, for the price of $37,000.00. The house contained approximately 1,800 square feet and was cooled by a three ton central air conditioning system. Prior to the sale, the petitioner and defendant had entered into a written purchase agreement which contained the following warranty: "Seller warrants all appliances, air conditioning, heating and plumbing and lighting fixtures to be in working order."
Prior to the closing of the sale, petitioner requested that the defendant give him an express warranty to the effect that the air conditioning system would maintain a 20 degree differential between the inside and outside temperatures. The testimony is conflicting as to whether or not said warranty was given, however, the Trial Court held that the petitioner failed to prove by a preponderance of the evidence that any express warranty to this effect was made by defendant.
The evidence reflects that on Friday, June 25, 1973, petitioner moved his furniture into the house but did not stay there over the weekend. The house remained closed over the weekend with the air conditioning on and the thermostat set at 72 degrees. When petitioner returned to the house on Sunday afternoon, he discovered that the house was 78 degrees with an outside temperature of 90 degrees. The temperature rose to 83 degrees and stayed over 80 degrees until midnight. After checking the temperature differentials, the petitioner found that the best differential which the unit could maintain was 12 degrees.
The unit failed on August 15, 1973, because of a burned out capacitor. Cost of repair was $45.75. In an attempt to remedy the situation the petitioner caused a power air vent to be installed in the attic which increased the differential to 14 degrees.
The testimony of the experts showed that the air conditioning system was too small to cool a house of this size during the summer months. All experts agreed that a 3½ ton unit was needed and that the three ton unit was inadequate. Eventually, petitioner replaced the three ton unit with a four ton Carrier brand unit at a cost of $1,930.00. A 3½ ton unit of the same brand would have cost $1,830.00. Another estimate received by petitioner was $1,450.00 for a four ton unit of another brand.
The defendant-appellant contends that the Trial Court erred (1) in holding that the condition of the air conditioning unit constituted a redhibitory defect or vice; (2) in the alternative, in failing to hold that the condition of the air conditioning unit was an apparent defect; (3) in the second alternative, in failing to hold that the conditions of the air conditioning unit was a latent defect declared by the vendor to the vendee; (4) in overruling appellant's exceptions filed following refusal by the Court to allow appellant to file a third party demand; and (5) in awarding appellee the sum of $1,350.00 and assessing costs to appellant.
We agree with the decision of the Trial Court that there was no express warranty shown on the part of the defendant to the effect that the unit would maintain a 20 degree differential between the inside and outside temperatures. The answer to this question, however, is not really important in view of the well established jurisprudence in this state relative to the warranty by a seller against hidden defects in an article sold. This warranty is an implied condition of every sale. Rey v. Cuccia, *725 La., 298 So.2d 840 (1974), reh. denied (1974).
The Civil Code Articles relating to the implied warranty against redhibitory defects, are as follows:
Article 2520: "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Article 2521: "Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
Article 2541: "Whether the defect in the thing sold be such as to render it useless and altogether unsuited for its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
Article 2544: "The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action."
The Trial Court held that the inadequate and undersized air conditioning system constituted a vice or defect which rendered the use of the house so inconvenient or imperfect that the buyer would not have purchased it had he known of the vice or defect. The Court cited Cipriano v. Superior Realty & Construction Corp., 228 La. 1065, 84 So.2d 822, 826 (1955), reh. denied (1956), as follows:
"When a house is sold with a heating system already installed, the heating system forms as much a part of the house as does the foundation or the roof and is covered by the vendor's warranty. If the heating system proves to have hidden vices which existed at the time of the sale and which were such as to render it useless and unsuited for its purpose, the buyer has an action for redhibition or diminution of the purchase price."
We agree with the decision of the Trial Court that the effect of the insufficient capacity of the central air conditioning system was a vice or defect within the meaning of LSA-C.C. Art. 2520. Although it is true that the unit functioned properly for a three ton unit, the testimony shows that a three ton unit would not adequately cool the house. We feel that it is implied in the sale of the house with a central air conditioning system that the system is of adequate capacity to comfortably cool the house. Air conditioning in this day and age is almost a necessity. Certainly we do not feel that the petitioner would have purchased this house had he known that the unit installed therein was of insufficient size to properly maintain a comfortable temperature. A 12 degree, or even a 14 degree differential is insufficient to adequately cool a house in Baton Rouge during the summer months.
The next question considered by the Trial Court was whether the defect in this case was apparent within the meaning of LSA-C.C. Art. 2521. On this score, the Court cited Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963), reh. denied (1963), as follows:
"Article 2521 of the Civil Code excludes, from the vices for which redhibition may be demanded, apparent defects `that is, such as the buyer might have discovered by simple inspection * * *'. Inspection, as defined by Webster's New International Dictionary, 2nd Ed., means a strict or prying examination. This connotes more than mere casual observation; it envisages an examination of the article by the vendee with a view of ascertaining its soundness. However, the Code limits the exclusion of warranty to those defects discoverable by a simple inspection. This, it is manifest, relieves the buyer of examining the inner or hidden *726 parts of the object of the sale for the purpose of ascertaining the existence of latent defects." (Emphasis by Supreme Court).
We feel, as did the Trial Court, that the insufficient size of the air conditioning system was not apparent or discoverable by a simple inspection. An inspection of the unit by petitioner would have revealed that it was in working order. We do not feel, however, that petitioner was of such expertise in the air conditioning field as to determine by a simple inspection that this house would require 3½ tons of air conditioning as opposed to three tons. Plaintiff did testify that once when he visited the house before the purchase, he noticed it to be warm inside and mentioned this to the defendant. The response was that the children were running in and out of the house, and it caused it to be warm. An ordinary, prudent buyer is not held to the standard that would be required of an expert in air conditioning.
The evidence, as testified to by defendant, discloses that she was uncertain as to what temperature differential the air conditioning system would maintain, and that, upon the advice of a real estate broker she only warranted that the unit was in proper working order. This indicates that petitioner at least made some attempt to determine beforehand whether this unit would adequately cool this particular house.
As to the third specification of error, the Trial Court's failing to hold that the condition of the air conditioning unit was a latent defect declared by the vendor to the vendee, we do not agree. It is argued that since appellant warranted the air conditioning unit to be in good working order, she thereby gave formal notice to the appellee of the condition of the air conditioning unit, and that since this was the condition held to be the defect, the plaintiff cannot maintain such an action. The error is in not distinguishing between the working condition of the air conditioning unit per se and its ability to adequately cool the house in question. It is the inability of the air conditioning unit to adequately cool the house that was the defect, and this was not mentioned to the plaintiff.
On the morning of the trial the attorney for the defendant asked for a continuance in order that he might file a Third Party Petition, a Peremptory Exception pleading non-joinder of indispensable party and a Dilatory Exception pleading non-joinder of a necessary party. His contention was that Chet Homes, Inc., the builder of the house in question, is an indispensable party in this case and that if, indeed, the Court were to determine that the undersized air conditioning unit was a redhibitory vice or defect, then, and in that event, the defendant herein should have his recourse against the builder of the house. In support of his contention, he cites Civil Code Article 2531 which, subsequent to the filing of the petition in this matter, was amended[1] to add the following provisions:
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
This amendment has no bearing whatsoever on the present case which was filed prior to its enactment. Furthermore, *727 in its reason for its refusing to permit defendant to file such pleadings, the Trial Court cited the many delays as well as the fact that the defendant had ample time since the filing of this suit to bring in any third party or file any exceptions which it deemed necessary. We feel, therefore, that the Trial Court was correct in so holding, and there was no abuse by the Trial Judge.
As we have stated before, the cost of the four ton unit which was installed by petitioner was $1,930.00. A 3½ ton unit of the same brand would have cost $1,830.00. An estimate of the cost of a four ton unit of another brand was $1,450.00.
The unit in the house at the time it was purchased was approximately seven years old and the testimony discloses that there is little or no market for a used central air conditioning unit. Petitioner did advertise the old unit for two months and, although it was in working order, petitioner could find no buyer.
The petitioner proved that it did repairs to the old system of $45.75 on September 12, 1973, for a starter relay and starting capacitor, and $34.50 on August 3, 1973, for another starting capacitor. Mr. Laverne, who did the repair work and who was qualified as an expert testified that these repairs could be caused by several things and that repairs of this sort were not uncommon for a unit of that age. The Trial Court refused to consider these repairs as an element in reduction of the price, and we concur in this refusal. The Trial Court then awarded $1,350.00 reduction after considering the overall evidence and exercising its limited discretion and setting a reduced sale price at the time of the sale. With this conclusion, we concur.
For the reasons hereinabove assigned, the judgment of the Trial Court is affirmed, all costs of this appeal to be paid by defendant-appellant.
AFFIRMED.
NOTES
[1] LSA-C.C. Art. 2531 was amended by Act No. 673 of the 1974 Regular Session of the Louisiana Legislature. "All laws enacted shall go into effect at twelve o'clock, noon, on the twentieth day after the Legislature shall have adjourned. * * *." La.Const. Art. 3, § 27 (1921). The Louisiana Legislature adjourned sine die on July 11, 1974, hence, the effective time and date was 12:00 noon, July 31, 1974. Suit was filed April 5, 1974, and trial commenced on February 3, 1975.