559 So.2d 879 (1990)
K.E. PITTMAN and State Farm Fire and Casualty Company
v.
KAISER ALUMINUM AND CHEMICAL CORPORATION, et al.
No. 89-CA-1293.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1990.
Writ Denied May 25, 1990.
*880 George E. Cain, Jr., Peter E. Sperling, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendant/appellee Kaiser Aluminum and Chemical Corp.
Elizabeth Haecker Ryan, Daniel Lund, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for appellee Leviton Mfg. Co., Inc.
Raymond A. Pelleteri, Jr., James Harmon, Joseph R. Ward, Ward & Clesi, New Orleans, for appellants.
Before LOBRANO and ARMSTRONG, JJ., and HUFFT, J. Pro Tem.
LOBRANO, Judge.
This is an appeal from the granting of exceptions of no cause of action. Plaintiffs, K.E. Pittman (Pittman) and his subrogated insurer, State Farm Fire and Casualty Company (State Farm) appeal the dismissal of their redhibition claims against Kaiser Aluminum and Chemical Corporation (Kaiser) and Leviton Manufacturing Company, Inc. (Leviton), and the dismissal of their claim for punitive damages against Kaiser.
Because of a fire which destroyed the Pittman residence, Pittman and State Farm, on July 1, 1983, filed a petition for damages against Kaiser, Leviton, Gaslight and others asserting various acts of negligence and claims in products liability. On September 8, 1988, Pittman and State Farm filed a supplemental and amending petition alleging Kaiser and Leviton, as the manufacturers of faulty electrical wires and receptacles, were liable in redhibition. They *881 allege that those defective component parts of Pittman's residence rendered it so useless and imperfect that Pittman would not have purchased the residence had he known of the defects. In addition, Pittman and State Farm seek punitive damages from Kaiser alleging that because Kaiser manufactured the defective wire in California, the law of that state, which allows punitive damages, is applicable to their claim.
On September 27th and December 20, 1988, Kaiser and Leviton, respectively, filed exceptions of no cause of action. Kaiser's exception addressed the claims in redhibition as well as exemplary and punitive damages. Leviton's exception addressed only the claim in redhibition. Judgment was rendered on June 7, 1989 granting both exceptions.
From this judgment Pittman and State Farm perfect this appeal asserting the trial court erred in dismissing the cause of action in redhibition against both defendants, and in dismissing the punitive damage claim against Kaiser. We affirm.
Initially we note that the trial court's judgment dismisses only the redhibition and punitive damage claims asserted by plaintiffs. It does not dismiss the negligence and product's liability claims, and thus, as to Kaiser and Leviton, it is not a "final judgment" subject to appeal. However, in the interest of judicial economy we shall address the issues raised even though the proper vehicle for their review was an application for supervisory writs.
The exception of no cause of action can be maintained only when, assuming the facts alleged in the petition are true, they disclose no cause of action on any ground raised in the petition. Gorman v. Swaggart, 524 So.2d 915 (La.App. 4th Cir.1988), writ den., 530 So.2d 571, 572, 573, 574 and 575 (La.1988); Faciane v. Southern Shipbuilding Corp., 446 So.2d 770 (La.App. 4th Cir.1984); Meche v. Arceneaux, 460 So.2d 89 (La.App. 3rd Cir.1984). The purpose for the exception of no cause of action is to test the legal sufficiency of the petition itself, not the evidence which may or may not be available to prove what is alleged. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975). The exception must be decided on the face of the petition and no evidence may be introduced to support or controvert the exception. La.C.C.Pro. Art. 931.
REDHIBITION CLAIM
The pleadings assert the following facts. First, the premises in question was originally built by Gaslight. Second, the general contractor was Mark Smith. Third, the aluminum wiring used by Gaslight and Smith was manufactured by Kaiser. Fourth, the electrical outlets used by Gaslight and Smith were manufactured by Leviton. Fifth, the fire which destroyed the home was caused by the low conductivity of the aluminum wiring manufactured by Kaiser and connected to an outlet manufactured by Leviton.
The redhibition articles of our Civil Code are found in Book III, Title VII: Of Sale. C.C. Arts. 2510 thru 2548. The entirety of those Articles are predicated on the existence of a contract of sale, i.e. a vendor-vendee relationship. Article 2520 provides:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which rendered it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Articles 2475 and 2476 provides:
"The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells. (emphasis added)
The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices." (emphasis added)
Thus, an action in redhibition seeks the avoidance of a sale based on a breach of the seller's warranty of peaceable possession of the thing sold or its hidden or redhibitory defects.
*882 In the instant case, there are no allegations that Kaiser and/or Leviton sold the residence to the Pittmans or that the Pittmans seek a cancellation or avoidance of the sale. Absent a vendor-vendee relationship there can be no claim based on redhibition. Hostetler v. W. Gray and Company, Inc., 523 So.2d 1359 (La.App. 2d Cir.1988), writ den., 531 So.2d 470 (La. 1988); Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir.1982), writ den., 427 So.2d 870 (La.1983); Davis v. Davis, 353 So.2d 1060 (La.App.2d Cir.1977), writ den., 355 So.2d 549 (La.1978); LeBlanc v. Ellerbee Builders, Inc., 317 So.2d 1 (La.App. 1st Cir.1975).
Plaintiffs argue, however, that because Kaiser and Leviton are the manufacturers of defective products used in the construction of their home, they are answerable in redhibition as a seller. In support they cite Aizpurua v. Crane Pool Co., Inc., 449 So.2d 471 (La.1984); Bermes v. Facell, 328 So.2d 722 (La.App. 1st Cir.1976); and Media Production Consultants, Inc. v. Mercedes Benz of North American, Inc., 262 La. 80, 262 So.2d 377 (1972). None of those cases are applicable to the instant issue.
In Aizpurua, supra, the plaintiffs sued the manufacturers of their swimming pool for defects in its construction even though they had no privity of contract. The court held that plaintiffs were subrogated to their vendor's implied warranty claims against the pool manufacturer, and thus the ten year prescriptive period of Article 3500 was applicable. The recognition by the court of a warranty claim, without privity of contract, against the manufacturer of a "thing", i.e. the pool, does not support a redhibition claim against the manufacturer of a "component of a thing," i.e. the wire or receptable used in the home.
In Bermes v. Facell, supra, the redhibition claim was brought by plaintiff against his vendor for diminution in the sales price of a residence because of a defective air conditioner. Clearly that case supports the Civil Code principle of a vendor-vendee relationship. The manufacturer of the air conditioner was not named as a "redhibition" defendant.
Finally, in Media Production Consultants, Inc., supra, the court allowed a vendee of a Mercedes automobile to recover in redhibition, not only against his immediate vendor, but against the distributor who occupied the position of a manufacturer. The recovery for return of the purchase price against the manufacturer was based on the implied warranty of fitness a manufacturer owes for that which he produces.
The Media decision can be interpreted as permitting a redhibition claim against a manufacturer absent a vendor-vendee relationship. However, its logic is premised on the fact that the manufacturer produced the "whole thing" i.e. the car. In that situation, the manufacturer already owed an implied warranty of fitness. Hence, a breach of that implied warranty included the return of the purchase price as an element of damages. Even though this is a redhibition remedy, Media does not support the same result where the defendant-manufacturer produced, but did not sell to plaintiff, only a component part of the thing.
A situation similar to the instant case arose in Cipriano v. Superior Realty and Construction Company, 228 La. 1065, 84 So.2d 822 (1955). In Cipriano, the plaintiff-vendee filed suit against the vendor of the home, the contractor, the surety for the contractor, and the insurer of the gas equipment company which manufactured the defective heater which caused the fire that destroyed the home. Following trial on the merits, the court dismissed plaintiff's suit in its entirety. The high court held that plaintiff's claim for reduction of the purchase price against the vendor was well founded but that similar claims against the other non-vendors were invalid.
We conclude that Pittman and State Farm have asserted a cause of action in negligence and products liability against Kaiser and Leviton. However, the pleadings do not allege sufficient facts to support a redhibition claim. The trial court was correct.
PUNITIVE DAMAGES:
Pittman and State Farm assert that they have a cause of action for punitive damages *883 pursuant to California Civil Code Section 3294.[1] Their supplemental petition alleges that California law is applicable. We disagree.
Assuming as true each and every fact pleaded by plaintiffs, for the following reasons we determine that California law is not applicable in this case, and thus there can be no cause of action for punitive damages.
It is well settled that the choice of law rule applicable in tort in Louisiana is a form of "interest analysis" applying the "most significant relationship" approach of the Restatement (Second) of Conflicts of Laws (1969). Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973); Lee v. Ford Motor Co., 457 So.2d 193 (La.App. 2nd Cir.1984), writ denied 461 So.2d 319 (La.1984). Interest analysis is a two step process. First, it must be determined whether a true or false conflict exists. If a false conflict exists, the law of the state that has the exclusive interest is applied and the second step is unnecessary. If a true conflict exists, however, the second step is to apply the law of the state with the most significant contacts. Lee v. Ford Motor Company, supra.
In the instant case, a true conflict exists. California has an interest in preventing manufacturers within its boundaries from placing defective products in the stream of commerce. California's punitive damage law, if applied in this case, would serve to deter a California manufacturer such as Kaiser from placing defective wiring into the stream of commerce. Louisiana, however, has consistently rejected punitive damages in civil actions. Breaux v. Simon, 235 La. 453, 104 So.2d 168 (La.1958); Holcombe v. Superior Oil Company, 213 La. 684, 35 So.2d 457 (1948); Fassitt v. United T.V. Rentals, Inc., 297 So.2d 283 (La.App. 4th Cir.1974); Boutte v. Hargrove, 277 So.2d 757 (La.App. 4th Cir.1973), writ den., 281 So.2d 744 (La.1973). Louisiana's interest lies in the protection of its judicial system, rather than domestic defendants, from what it might consider inherently speculative awards. Ardoyno v. Kyzar, 426 F.Supp. 78 (E.D.La.1976).
Since a true conflict exists, the second step is to determine which state has the most significant relationship to the issue. In so doing we note that Section 6 of the Restatement of Conflict of Laws provides several factors to be considered where a state has no statutory directive on the choice of law. Those factors are:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified exceptions,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity or result, and
(g) ease in the determination and application of the law to be applied."
Specifically referring to tort issues and injuries to tangible things, sections 145 and 147 provide:

* * * * * *
"Section 145. The General Principle.
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Section 6. (emphasis added)
(2) Contacts to be taken into account in applying the principles of Section 6 to *884 determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue."

* * * * * *
"Section 147. Injuries to Tangible Things.

In an action for an injury to land or other tangible thing, the local law state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Section 6 to the occurrence, the thing and the parties, in which event the local law of the other state will be applied. (emphasis added).
Comments (c) and (e) to section 147 make it clear that unless there is a significant relationship between the occurrence and the foreign state, the overriding policies of certainty, predictability and uniformity of result require application of the law of the state where the injury occurred.
The relevant Section 145 contacts between the parties in this case, based on the assumed facts set out in the petition, clearly demonstrate that Louisiana, the forum state, has the most "significant interest". Pittman is a Louisiana domiciliary. State Farm is located in and does substantial business in Louisiana. Kaiser and Leviton are foreign corporations doing business in Louisiana. The property in question is an immovable (tangible) located in Louisiana. The accident and resulting damage occurred in Louisiana. The only factor that is not related to Louisiana is the manufacture of the wire in California by Kaiser, a California Corporation. As previously noted California's interest and Louisiana's interest are clearly opposite on the issue of punitive damages.
Considering all of the assumed facts alleged in this case, and applying them to the legal guidelines expressed herein, we conclude that the trial judge was correct in finding that the petition failed to state a cause of action for punitive damages.
AFFIRMED.
NOTES
[1] Ca.Civil Code Ann. Art. 3294:

"In an action for the breach of an obligation not arising from a contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff ... may recover damages for the sake of example and by way of punishing the defendant.
`Malice' means conduct which is intended ... to cause injury to the plaintiff or conduct which is carried on by the defendant with the conscious disregard of the rights or safety of others."