**SECURITY HOMESTEAD ASSOCIATION**

v.

**W.R. GRACE & CO.**

**Civ. A. No. 88–5165.**

United States District Court, E.D. Louisiana.

Aug. 14, 1990.

Louise Ferrand Hemard, Security Homestead Ass'n, New Orleans, La., C. Alan Runyan, William Jordan, David C. Eckstrom, Speights & Runyan, Hampton, S.C., Fredericka Homberg Wicker, New Orleans, La., for plaintiff.

John J. Weigel, Jones, Walker, Waechter, Poitevent, Cattere & Denegre, New Orleans, La., for defendant.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This diversity litigation arises from the presence of asbestos in fireproofing materials ("Monokote–3") applied in the construction of plaintiff's 10–story office tower at 4900 Veterans Boulevard, Metarie, Louisiana during the period 1970–1971. Security first discovered the presence of asbestos in its fireproofing materials in October 1986 and initiated this suit in November 1988 under Louisiana'a asbestos abatement statute, LSA R.S. 9:5644,[1] after discovering

---

1. Titled "Prescription of actions involving asbestos abatement," added by Acts 1985, No. 728, § 1. The statute provides:

[A.] Asbestos abatement shall include any of the following:

(1) The removal of asbestos or materials containing asbestos from any building.

(2) Any other measures taken to detect, correct, or ameliorate any problem related to asbestos in a building.

(3) Reimbursement for the removal, correction, or amelioration of asbestos or materials containing asbestos.

[B.] Notwithstanding any other provision of law to the contrary, any time limitation or prescriptive period which may be applicable to any action to recover for asbestos abatement work shall not apply or expire until five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later.

[C.] Any person who has an action to recover for asbestos abatement work under the provisions of this Section but whose action is barred by the prescriptive period provided in R.S. 9:5644 shall have one year from the effective date of this Act within which to bring an action or be forever barred.

that this friable asbestos was now present in air samples taken from the building in August 1988. Security's complaint alleges, *inter alia,* that Grace & Co. had known for decades that its "Monokote–3" product was dangerous to human health, that defendant continued to market same wherever it could until the use of this product was finally banned by the federal government, that the defendant sold this product to plaintiff without any warnings or special instructions and that the defendant has refused requests by plaintiff to abate these materials from its property. Plaintiff claims it has already initiated renovations to abate the asbestos hazard on portions of two floors of its 10–story office tower, with substantial losses and disruption to its operations that will continue into the future until the abatement is complete, and seeks recovery under LSA R.S. 9:5644 for specific claims against the defendant in strict liability, negligence, breach of implied warranties, breach of express warranties, fraud and misrepresentation, redhibition, and restitution.[2] The defendant's answer generally denies the allegations and asserts that plaintiff has failed to state any claims, or that any such claims have prescribed or perempted, and that the Louisiana asbestos abatement "revival" statute, LSA R.S. 9:5644, is unconstitutional. Grace has moved for summary judgment on all counts under these theories.

## I.

■ The first question presented by defendant's motions for summary judgment is whether LSA R.S. 9:5644, the Louisiana asbestos abatement "revival" statute, is unconstitutional as a special law prohibited by the Louisiana Constitution and the equal protection and due process guarantees of both the Louisiana and United States Constitutions.

■ State Legislatures are presumed to act constitutionally even when source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them. *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).[3] The question of whether R.S. 9:5644 operates improperly as a special law in violation of the Louisiana Constituion, Art. 3, § 12 depends on whether the statute operates equally upon all persons of a designated class founded upon reasonable and proper classifications, or whether the statute affects only a certain number of persons within a class and not all persons possessing the characteristics of that class. *Burmaster v. Gravity Drainage District No. 2,* 366 So.2d 1381, 1385 (La.1978); *Teachers' Retirement System of Louisiana v. Vial,* 317 So.2d 179, 183 (La.1975).

The class of persons which R.S. 9:5644 affects are those manufacturers of asbestos products whose products are currently fixtured in any kind of building in Louisiana. Defendant contends the statute is a prohibited special law because not all manufacturers of asbestos products, of whatever nature and wherever situate, are included in its coverage. The defendant further contends that the statute is the product of lobbying by "special interests." This Court finds that any practical exclusions or exceptions to those covered by R.S. 9:5644 are reasonably and properly based upon the Legislature's valid distinction between immovable, contaminated real properties where people work and sleep—and which

[D.] Nothing in this Section is intended to nor shall it have the effect of changing in any respect the applicable prescription periods fixed by law for benefits under the worker's compensation law for claims for damages due to asbestos related injury or disease.

**2.** Count IX, Exemplary Damages, was dismissed by the Court on defendant's motion for summary judgment as neither covered by La.Civ.Code article 2315.3 nor covered by LSA R.S. 9:5644,

and therefore prescribed, by ORDER dated November 30, 1989. Count VI, Civil Conspiracy, was dismissed by the Court on July 31, 1990 on plaintiff's unopposed motion.

**3.** *See also McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Kotch v. Board of River Port Pilot Commissioners,* 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); *Lindsley v. Natural Carbonic Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

present the greatest risk of harmful exposure—and other types of transient personalty which might be contaminated. Therefore, in accordance with the rulings of the Supreme Court of Louisiana in *Burmaster,* supra, and *Teachers' Retirement System of Louisiana,* supra, the Court finds that LSA R.S. 9:5644 is not a special law prohibited by Article 3, § 12 of the Louisiana Constitution.

■ The defendant next contends that this asbestos abatement statute violates the equal protection guarantees of the Louisiana and United States Constitutions. Louisiana's equal protection guarantee is intended only as a restatement of the federal equal protection clause, and the limitation on the Legislature is that it not act arbitrarily, capriciously or unreasonably when affecting different members of a given class. *State v. Barton,* 315 So.2d 289, 291 (La.1975). Where there is no involvement of a "suspect classification" or "fundamental right," as is the case here, traditional equal protection analysis applies and will sustain the classification if it is not arbitrary and bears a rational relationship to a legitimate state interest. *Everett v. Goldman,* 359 So.2d 1256, 1266–7 (La. 1978); *State v. Everfield,* 342 So.2d 648, 653 (La.1977). In light of the facts now known to Louisiana's Legislature and citizens regarding the long-term health dangers of asbestos, there is clearly a rational basis for and legitimate state interest in the abatement of asbestos conditions from all buildings in the State of Louisiana.

Legislatures have a wide scope of discretion in enacting laws which affect some groups of people and not others, and equal protection is not offended when the classification rests on grounds rational to the achievement of the State's objective. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). It is particularly within the scope of the Louisi-

ana Legislature to adjust time periods affecting the imposition of liability for past acts, *Burmaster v. Gravity Drainage District No. 2,* 366 So.2d 1381 (La.1978), and the Court finds, therefore, that LSA R.S. 9:5644 does not violate the equal protection components of either Article 1, § 3 of the Louisiana Constitution or the Fourteenth Amendment of the United States Constitution.

■ Defendant further contends that the adjustment of the prescriptive period for certain causes of action provided for in LSA R.S. 9:5644 violates the due process guarantees of both the Louisiana and United States Constitutions.

■ The guarantees of due process do not forbid the creation of new causes of action or the abolition of old ones to obtain permissible legislative objectives. *See Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Statutory enactments in Louisiana are presumed constitutional, *Everett v. Goldman,* 359 So.2d 1256 (La. 1978); *State v. Everfield,* 342 So.2d 648 (La.1977), and Louisiana jurisprudence has long recognized the validity of legislative regulation of causes of action.[4] The "hardships and oppressive effects" complained of by the defendant in having to answer now, in the limited scope of the Louisiana revival statute at issue here, for its past acts which were found by the Louisiana Legislature in 1985 to have caused significant present harms, is unpersuasive in the context of civil liability. Historically, the shelter of a prescriptive period (or "statute of limitation") has never been regarded as a fundamental right or a "natural" right, and prescriptive or peremptory periods come into law not through the judicial process but through legislation.[5] The asbestos abatement "revival" statute at issue here falls specifically within the scope of the Louisiana Legislature to adjust time periods affecting the imposition of liability

4. *See Anchor v. Belden Concrete Products, Inc.,* 260 La. 372, 256 So.2d 122 (1971); *Colorado v. Johnson Iron Works,* 146 La. 68, 83 So. 381 (1919).

5. *See Chase Securities Corporation v. Donaldson,* 325 U.S. 304, 313–15, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945); *see generally Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); *Campbell v. Holt,* 115 U.S. 620, 626–630, 6 S.Ct. 209, 212–214, 29 L.Ed. 483 (1885).

for past acts, *Burmaster v. Gravity Drainage District No. 2,* 366 So.2d 1381 (La.1978), and the Court finds, therefore, that LSA R.S. 9:5644 does not violate the due process components of either Article 1, § 2 of the Louisiana Constitution or the Fourteenth Amendment of the United States Constitution.

Accordingly, defendant's motion for summary judgment, premised on the unconstitutionality of LSA R.S. 9:5644 and that plaintiff's complaint is therefore prescribed or perempted in its entirety, is hereby DENIED.

## II.

■ The seminal issue presented by defendant's further motions for summary judgment is the scope of Louisiana's asbestos abatement statute, and whether LSA R.S. 9:5644 "revives" and extends the prescriptive periods for Security Homestead's demands for relief under the theories of redhibition, breach of implied warranties, breach of express warranties, fraud and misrepresentation, and restitution.[6] The Louisiana asbestos abatement statute provides, in pertinent part:

A. Asbestos abatement shall include any of the following:

(1) The removal of asbestos or materials containing asbestos from any building.

(2) Any other measure taken to detect, correct, or ameliorate any problem related to asbestos in a building.

(3) Reimbursement for the removal, correction, or amelioration of asbestos or materials containing asbestos.

The statute purports on its face to provide owners of buildings in Louisiana with a means of shifting the losses incurred by the necessity of asbestos abatement and corrective work back onto the manufacturers of these asbestos products themselves.

The Legislature, by its chosen language, has concluded that manufacturers of asbestos products be held strictly liable for these losses once they accrue, and the cause of action referred to by the statute relates only to reimbursement for the expenses in detecting, correcting or ameliorating the problems of asbestos contamination, and any other consequential problems related to asbestos contamination in a building, once the asbestos-containing product has been completely removed or the manufacturer of the product has been identified, whichever occurs later.[7] Omitted from the scope of the statutory language are those claims of putative plaintiffs relating to the knowledge, due care, intent, recklessness, malice or other attributes of damnable culpability on the part of these manufacturers. Accordingly, the Court finds that the statute revives and extends the prescriptive period for only those claims grounded in strict liability for recovery of those losses and expenses incidental to the abatement of a given asbestos problem in a building.

## III.

The defendant has moved for summary judgment on the pleadings or, alternatively, by reason of prescription, on plaintiff's claims in redhibition, breach of implied warranties and breach of express warranties.

Louisiana's warranty laws are embodied in its redhibition statutes[8], *Jones v. Menard, et al,* 559 F.2d 1282, 1284 (5th Cir. 1977), and the Louisiana Products Liability Act.[9] Under Louisiana's Civil Code, "redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."[10] Though the nature of plaintiff's acquisition of the fireproofing materi-

---

6. Count I–Strict Liability and Count II–Negligence are not challenged in defendant's further motions for summary judgment either substantively or under the statute. Count IX–Exemplary Damages was already dismissed by the Court on November 30, 1989 as neither covered by La.Civ.Code, Art. 2315.3 nor covered by LSA R.S. 9:5644, and therefore prescribed.

7. LSA R.S. 9:5644(B).

8. La.Civ.Code, Arts. 2475, 2476 and 2520 to 2548 (West 1952, West Supp.1990).

9. LSA R.S. 9:2800.51–59 (West Supp.1990).

10. La.Civ.Code, Art. 2520 (West 1952).

als from W.R. Grace & Co. has been disputed by the parties, the Court finds the transaction was a sale of goods, with the defendant as vendor and plaintiff as vendee, as it was the plaintiff itself that built the office tower in question with its building contractors.[11] It is not necessary, however, for the Court to review the substantive law of redhibition, implied warranty or express warranty, without first examining the issue of prescription, and whether such actions are revived and extended by the asbestos abatement statute.

Actions in redhibition and breach of warranty in Louisiana are subject to a one-year prescriptive period running from the date of sale,[12] with the exception that an action may be commenced within one year of the discovery of the vice if the seller had knowledge of the vice and neglected to declare it to the buyer.[13]

It is undisputed that the plaintiff first discovered the presence of asbestos in its building in October 1986, yet did not initiate suit in this matter until November 1988. Plaintiff reasons it did not know the magnitude of its harm until air samples were taken in the building in August 1988. While viewing the pleadings in a light most favorable to the plaintiff, the Court finds that the plaintiff knew or should have known in October 1986 that a cause of action against W.R. Grace & Co. had accrued under the theories of redhibition, implied warranty and express warranty, and that one year following the commencement

of their knowledge of the presence of asbestos in their building any such causes of action would prescribe.[14] Following review of the asbestos abatement statute, LSA R.S. 9:5644, this Court finds that the narrow language of the statute does not revive and extend the prescriptive period for actions grounded in redhibition, implied warranty or express warranty, as the claims encompassed by the statute are grounded in strict liability for the expenses and losses associated with the abatement work itself, and therefore plaintiff's claims under these theories have prescribed absolutely.

Accordingly, defendant's motion for summary judgment on the pleadings or, alternatively, by reason of prescription, on plaintiff's claims in redhibition, implied warranties and express warranties is GRANTED and Counts VII, III and IV of plaintiff's complaint are hereby dismissed.

Defendant further moves for summary judgment as a matter of law or, alternatively, by reason of prescription, on plaintiff's claims in fraud and misrepresentation, and restitution. A claim of fraud and misrepresentation is a delictual action in Louisiana with a one-year period of prescription following discovery or knowledge of the damage to immovable property.[15] It is not necessary for the Court to examine the substance of defendant's alleged misrepresentations, or plaintiff's alleged justifiable reliance upon those representations, for as noted above the plaintiff's discovery

---

**11.** Counsel for the parties have extensively briefed the substantive law of redhibition in Louisiana, relying on the line of cases from *Cipriano v. Superior Realty and Construction Company*, 228 La. 1065, 84 So.2d 822 (1955), *reh. denied*, (La.1956) to *Pittman v. Kaiser Aluminum and Chemical Corporation, et al*, 559 So.2d 879, *reh. denied*, (La. May 25, 1989) to reach opposing results.

**12.** La.Civ.Code Ann., Art. 2534, (West 1952, Supp.1990).

**13.** *Id.* This exception is essentially repeated in Article 2546, which provides that a redhibitory action may be commenced against a seller in bad faith at any time, provided that a year has not elapsed since the date of discovery of the vice; this discovery is not presumed and must be proved by the seller. La.Civ.Code, Art. 2546 (West 1952). Article 2545 provides, in addition, that the bad faith seller also may be liable for

reasonable attorney's fees and additional damages. La.Civ.Code, Art. 2545 (West Supp.1990).

**14.** Asbestos contamination had already been the subject of extensive news coverage and legislation at this point. *See* Prescription of actions involving asbestos abatement, LSA R.S. 9:5644 (1985); Louisiana School Asbestos Abatement Act, LSA R.S. 30:2341 *et seq.* (1985); Asbestos School Hazard Abatement Act of 1984, as amended, 20 U.S.C. § 4011 *et seq.;* Comprehensive Environmental Response, Compensation, and Liability Act of 1980 [CERCLA], as amended, 26 U.S.C. 4611 *et seq.*, 42 U.S.C. § 9601 *et seq.;* Asbestos School Hazard Detection and Control Act of 1980, 20 U.S.C. §§ 1411, 3601–3611.

**15.** La.Civ.Code, Arts. 3492–3 (West 1990).

of its contaminated fireproofing occurred in October 1986 and any claim against the defendant grounded in fraud and misrepresentation would have prescribed a year later. For the reasons stated previously, the Court finds that a claim grounded in fraud and misrepresentation is not revived and extended by the limited scope of LSA R.S. 9:5644, and plaintiff's claim in fraud and misrepresentation has prescribed absolutely.

■ Having established earlier that the transaction between the plaintiff and defendant in this case was a sale of goods, plaintiff's claim for restitution in this case also must fail. Restitution is an equitable remedy employed in Louisiana for the indemnification of a party in situations where there has been an unjust enrichment to one party at the detriment of another, and where there appears no remedy at law available to such a plaintiff for reimbursement. *Minyard v. Curtis Products, Inc.,* 251 La. 624, 205 So.2d 422 (La.1967), *reh. denied,* (La.1968). Plaintiff had numerous possible remedies when it first discovered that its fireproofing material contained asbestos, but failed to act upon them within the one-year prescriptive period provided by law. While plaintiff's claims in redhibition, warranty, and fraud and misrepresentation have prescribed absolutely for the reasons discussed earlier in this order, Security Homestead does have a remedy at law for indemnification in this case in the form of its strict liability claim for abatement and corrective work under the asbestos abatement statute, and the claim in restitution is thereby further precluded as a remedy.

Accordingly, defendant's motions for summary judgment as a matter of law or, alternatively, by reason of prescription, on plaintiff's claims in fraud and misrepresentation, and restitution, are hereby GRANTED, and Counts V and VIII of plaintiff's complaint are hereby dismissed.