ON REMAND FROM THE SUPREME COURT OF LOUISIANA

JiCIACCIO, Judge.
On remand from the Louisiana Supreme Court, we now consider whether the trial court erred in granting defendant United States Gypsum Company’s (USG) exception of prescription.[1]
On July 24, 1995, Marriott Hotel Property II Limited Partnership (Marriott) filed suit against United States Gypsum Company, alleging that during the construction of Marriott’s River Tower building from 1969 through 1970, an asbestos-containing ceiling finish called USG Imperial QT was used. Marriott alleged that USG was the designer, manufacturer, and distributor of Imperial QT, that at all times USG knew that it contained asbestos, and that USG failed to provide any warnings, cautions, or instructions that the product contained asbestos or was hazardous. Marriott further alleged that in 1986, it conducted a survey of its buildings and found the asbestos which led to abatement of the asbestos in conjunction with a renovation of the hotel and that the abatement was completed in 1993. Marriott set forth six causes of action against USG, the first of which alleged that Imperial QT was defective and that USG was liable for all damages caused by the manufacturing, selling, and providing to Marriott a defective product. The second cause of action alleged that USG failed to warn or caution Marriott that the product contained asbestos and there were available non-asbestos products; and in the third cause of action, Marriott alleged that at no time since the application of the product, has it been warned by USG that the product contained asbestos. The fourth cause of action stated that the asbestos fibers in the Imperial QT rendered the product so inconvenient and imperfect that Marriott would not have purchased it and used it had it known of the vice and that at the time it sold the product, USG knew of the vices and failed to warn or advise Marriott which makes USG liable under redhibition. The fifth cause of action alleged that Marriott incurred substantial expenses in connection with the removal of the asbestos, thereby entitling it to recover such expenses and damages from USG under LSA-R.S. 9:5644. In its sixth cause of action, Marriott alleged that at the time it sold its asbestos-containing product, USG knew or in the exercise of ^ordinary care should have known *753 that asbestos was deleterious, poisonous, carcinogenic, and highly harmful and would contaminate the building and that USG was negligent in selling the product, in failing to warn of the product’s dangers, in continuing to use asbestos when it was known to be carcinogenic, in failing to test the product, and in failing to warn Marriott of the inevitable and enormous asbestos removal costs.
USG filed various exceptions, including an exception of prescription as to the redhibition claim only. USG argued that the redhibition claim prescribed in 1987, one year after the survey in which the asbestos was discovered. In response, Marriott argued that the prescriptive period for filing a redhibition claim was suspended by LSA-R.S. 9:5644.[2] It also produced documents concerning the asbestos-abatement project. One document was a report dated December 22, 1986, which stated that asbestos was present in the ceiling-materials of the guest rooms. A second document was a contract dated June 4, 1992, for removal of the asbestos-containing material; and, a third document dated February 24, 1993, which was the final invoice for the asbestos-abatement project. Marriott also attached an opinion from the federal court for the Eastern District of Louisiana wherein the court held that LSA-R.S. 9:5644 suspended the prescriptive period for filing red-hibition claims.
On December 4,1995, the trial court granted the exception of prescription as to the redhibition claim.
The issue before us is whether LSA-R.S. 9:5644 interrupts the prescriptive period for bringing a redhibition claim involving the sale of asbestos-containing products. The statute in question provides:
A. Asbestos abatement shall include any of the following:
(1) The removal of asbestos or materials containing asbestos from any building.
(2) Any other measures taken to detect, correct, or ameliorate any problem related to asbestos in a building.
(3)Reimbursement for the removal, correction, or amelioration of asbestos or materials containing asbestos.
|8B. Notwithstanding any other provision of law to the contrary, any time limitation or prescriptive period which may be applicable to any action to recover for asbestos abatement work shall not apply or expire until five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later.
[[Image here]]
In arguing plaintiffs claim in redhi-bition has prescribed, USG relies on the decision rendered by the federal court for the Eastern District of Louisiana in the case of Security Homestead Ass’n v. W.R. Grace & Co., 743 F.Supp. 456 (E.D.La.1990). In Security Homestead the plaintiff discovered asbestos in the fireproofing materials in its office building in October, 1986 and filed suit in November, 1988 under LSA-R.S. 9:5644. The plaintiff sought damages from the defendant manufacturer for claims based on strict liability, negligence, breach of implied warranties, fraud and misrepresentation, redhi-bition, and restitution. The defendant asserted several defenses against these claims, including prescription as to the claims in red-hibition, breach of implied warranties, and breach of express warranties. Finding LSA-R.S. 9:5644 applicable only to claims grounded in strict liability, the court stated:
The Legislature, by its chosen language, has concluded that manufacturers of asbestos products be held strictly liable for these losses once they accrue, and the cause of action referred to by the statute relates only to reimbursement for the expenses in detecting, correcting, or ameliorating the problems related to asbestos contamination in a building, once the asbestos-containing product has been completely removed or the manufacturer of the product has been identified, whichever oc *754 curs later, [footnote omitted] Omitted from the scope of the statutory language are those claims of putative plaintiffs relating to the knowledge, due care, intent, recklessness, malice or other attributes of damnable culpability on the part of these manufacturers. Accordingly, the Court finds that the statute revives and extends the prescriptive period for only those claims grounded in strict liability for recovery of those losses and expenses incidental to the abatement of a given asbestos problem in a building.
[[Image here]]
Following review of the asbestos abatement statute, LSA-R.S. 9:5644, this Court finds that the narrow language of the statute does not revive and extend the prescriptive period for actions grounded in redhibition, implied warranty or express warranty, as the claims encompassed by the statute are grounded in strict liability for the expenses and losses associated with the abatement work itself, and therefore plaintiffs claims under these theories have prescribed absolutely.
743 F.Supp. at 460 and 461.
We agree with this interpretation of the intent and effect of LSA-R.S. 9:5644. ^Accordingly, we find that the trial court did not err in granting the exception of prescription as to Marriott’s redhibition claim.
We adopt the holding of the court in Security Homestead and find that plaintiff-relator’s writ application is without merit. The judgment of the trial court in favor of United States Gypsum Company, maintaining its exception of prescription and dismissing plaintiffs redhibition claim against it, is affirmed.

AFFIRMED.

. Marriott Hotel Property Limited Partnership v. United States Gypsum Company, 96-0368 (La. 3/29/96), 670 So.2d 1223.

. La.R.S. 9:5644(B) provides any time limitation or prescriptive period which may apply to any action to recover for asbestos abatement shall not apply or expire until five years after the date on which the party seeking to recover had completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later. This statute was enacted in 1985.